Anthony R. GUGLIOTTA, Plaintiff,

v.

EVANS & CO., INC., Charles Bonsignore and Paul Brown, Defendants.

No. 87 CV 1522 (ERK).

United States District Court, E.D. New York.

June 20, 1988.

Kraver & Parker by David M. Levy and Richard Kraver, New York City, for Gugliotta.

George Brunelle, P.C. by George Brunelle, New York City, for Charles Bonsignore.

Herrick, Feinstein, P.C., by Arthur G. Jakoby, New York City, for Evans & Co. and Paul Brown.

## MEMORANDUM AND ORDER

KORMAN, District Judge.

Anthony R. Gugliotta brought this action against Evans & Co., Inc. ("Evans & Co."), a broker-dealer registered with the Securities and Exchange Commission, and two of its employees, Charles Bonsignore and Paul Brown. Gugliotta alleges that Evans & Co. and Brown are responsible, directly or indirectly, for damages sustained by plaintiff as a result of Bonsignore's alleged fraudulent misrepresentation, unauthorized trading, manipulative practices and churning of plaintiff's brokerage account with Evans & Co.[1]

The defendants have moved to stay the proceedings in this matter and to compel arbitration pursuant to the Arbitration Act, 9 U.S.C. §§ 1–14 (1982). The motion is predicated on the arbitration clause in the Customer Agreement plaintiff executed with Evans & Co. Specifically, the Customer Agreement provides for the arbitration of "all controversies which may arise ... concerning any transaction or the construction, performance or breach of this

---

**1.** Plaintiff alleges that the defendants violated § 17(a)(2) of the Securities Act of 1933, as amended, 15 U.S.C. § 77q(a)(2); §§ 10(b) and 15(c) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b) and 78o(c), and Rules 10b–5 and 15c1–7. Plaintiff also asserts claims for damages under the common law of New York.

... agreement." The arbitration clause, however, "does not apply to any controversy for which a remedy may exist pursuant to an express right of action under the Federal Securities Laws." Reply Affidavit of Arthur G. Jakoby, Exhibit A, ¶ 13.

While it is not disputed that plaintiff's claims arise "under the Federal Securities Laws," the defendants argue that this exception is inapplicable here because the causes of action, to the extent they are legally sufficient, do not derive from an "express right of action under the Federal Securities Laws." Instead, defendants argue that the causes of action alleged in the complaint arise under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78a–78kk, and that "[o]nly implied rights of action exist under Sections 10(b) and 15(c) of the Exchange Act."[2] The same is said to be true of plaintiff's claim under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).[3]

The defendants are concededly correct in their suggestion that the complaint asserts causes of action that have been implied from the Exchange Act rather than expressly authorized. There is, however, a serious issue whether the arbitration clause should be enforced here. At the time the arbitration clause was inserted in the Customer Agreement by the plaintiffs, the clause violated Rule 15c2–2, 17 C.F.R. § 240.15c2–2 (1987). That rule provided in pertinent part that:

> [i]t shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

Rule 15c2–2 reflected the understanding of the Securities and Exchange Commission ("SEC") that, under prevailing case law, a pre-dispute waiver of the right to litigate a controversy with a broker was unenforceable regardless of whether the cause of action was express or implied. *Shearson/American Express, Inc. v. McMahon*, — U.S. —, 107 S.Ct. 2332, 2341 n. 3, 96 L.Ed.2d 185 (1987). Accordingly, the SEC correctly regarded it as "fraudulent, manipulative [and] deceptive" for a broker to enter into an agreement with a public customer that suggested that the customer could be forced to arbitrate disputes that were not subject to arbitration. Rescission of Rule Governing Use of Predispute Arbitration Clauses, Exchange Act Release No. 25,034, 52 Fed.Reg. 39,216 at 39,217 (Oct. 21, 1987).

On March 22, 1984, shortly after Rule 15c2–2 was promulgated, in a "no-action" letter issued in response to a request by the Securities Industry Association, the SEC reviewed and approved a proposed arbitration clause that excluded from the class of arbitrable disputes "any controversy with a public customer for which a remedy may exist pursuant to an express or implied right of action under the federal securities laws." Evans & Co. thereupon included the approved language in its customer agreements.[4]

The firm, however, changed this language following the decision of the Supreme Court in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). There the Supreme Court addressed the question "whether, when a complaint raises both federal securities claims and pendent state law claims, a Federal District Court may deny a motion to compel arbitration of the state-law claims despite the parties' agreement to arbitrate their disputes." 470 U.S. at 214, 105 S.Ct. at 1239. Although the case did

**2.** Memorandum of Points and Authorities in Support of Defendants Evans & Co., Inc.'s and Paul Brown's Pre–Answer Motion To Stay These Proceedings and Compel Arbitration at 5.

**3.** At the oral argument of the motion, the cause of action under § 17(a) of the Securities Act of

1933 was dismissed. Transcript of Oral Argument, August 7, 1987, at 21.

**4.** Memorandum of Law on Rule 15c2–2 at 12–15 and Exhibits A and B.

not directly involve either the issue of the arbitrability of claims arising under the Exchange Act or the validity of Rule 15c2–2, Justice White suggested in a concurring opinion that implied causes of action arising under the Exchange Act could properly be subject to pre-dispute arbitration. 470 U.S. at 224–25, 105 S.Ct. at 1244–45.

While even Justice White acknowledged that the issue of the validity of pre-dispute agreements to arbitrate such claims was "not before us," 470 U.S. at 224, 105 S.Ct. at 1244, Evans & Co. concluded that Justice White's concurring opinion changed prior law, and validated pre-dispute agreements to arbitrate causes of action arising under the Exchange Act. Accordingly, Evans & Co. unilaterally altered the previously approved language. The revised Customer Agreement, which was the one executed here, excluded from the arbitration clause only causes of action for which a remedy may exist pursuant to "an express right of action under the Federal Securities Laws."

While Evans & Co. suggests that this change was required to keep the arbitration clause of the Customer Agreement "in conformance with the changing law and in order to stay in compliance with the intent of Rule 15c2–2—namely disclosing to its customers the possibility of recourse to the courts notwithstanding the arbitration clause contained in its Customer Agreement," Memorandum of Law on Rule 15c2–2 Promulgated under Section 15(c) of the Securities Exchange Act of 1934 ("Memorandum of Law on Rule 15c2–2") at 14–15, it ignores the fact that as late as April 16, 1986, some five months after the Customer Agreement at issue here was signed, the Court of Appeals for the Second Circuit held that, "[a]lthough *Scherk* [*v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)] and *Byrd* may cast some doubt on whether the Supreme Court, if presented with the issue, would hold claims under § 10(b) and Rule

10b–5 to be non-arbitrable, it would be improvident for us to disregard clear judicial precedent in this Circuit based on mere speculation." *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94, 98 (2d Cir.1986), *rev'd,* — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Thus, despite its protestation to the contrary, until the holding of the Court of Appeals in *McMahon* was reversed in June 1987, Evans & Co. continued to mislead its customers regarding the possibility of recourse to a judicial forum and it likewise continued to violate Rule 15c2–2.[5]

Rule 15c2–2 was ultimately rescinded, effective October 21, 1987,[6] after the Supreme Court, in *Shearson/American Express, Inc. v. McMahon*, held that causes of action under the Exchange Act could be subject to a pre-dispute arbitration agreement. The question presented is whether, despite the rescission of Rule 15c2–2 after the lawsuit was filed, a broker who violated it, in the manner Evans & Co. did here, should be permitted to take advantage of its wrongdoing.

### Discussion

Agreements to arbitrate are governed by settled principles of contract law and a party to such an agreement "may assert general contract defenses" to an action seeking to enforce an arbitration agreement. *Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 11, 104 S.Ct. 852, 861 n. 11, 79 L.Ed.2d 1. The law is clear that agreements contrary to public policy are void and unenforceable. This rule "is not based upon any desire to relieve a party from the obligation which he has assumed, but rather is based upon the theory that such an agreement is injurious to the interests of society in general and that the only way to stop the making of such contracts is to refuse to enforce them and leave the parties without a remedy for a breach thereof." 21 N.Y.Jur.2d, *Contracts* § 144.

---

5. If Evans & Co. were really interested in providing its customers with the most current information regarding "the possibility of recourse to the court," as it claims, the revised arbitration clause should have advised customers that the enforceability of a pre-dispute agreement to arbitrate causes of action arising under the Exchange Act was an unsettled issue of law.

6. Rescission of Rule Governing Use of Predispute Arbitration Clauses, *supra* p. 145.

17 Am.Jur.2d, *Contracts* § 216. This principle, as the Supreme Court had occasion to observe, is deeply rooted in the common law:

> The principle is not new; but, on the contrary, it has been frequently announced, commencing in cases considerably over a hundred years old. It was said by Lord Mansfield, in *Holman v. Johnson*, 1 Cowper, 341, decided in 1775, that "the objection that a contract is immoral or illegal as between the plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act."

*Pullman's Palace Car Co. v. Central Transp. Co.*, 171 U.S. 138, 150–51, 18 S.Ct. 808, 813, 43 L.Ed. 108 (1898).

The applicability of this principle in the present case is complicated by the fact that, after this case was brought, Rule 15c2–2 was rescinded because of the Supreme Court's holding in *Shearson/American Express, Inc. v. McMahon.* Moreover, the purpose of Rule 15c2–2 was to prevent customers from being misled as to the availability of a judicial forum. Because plaintiff here was not misled, although others may have been, he cannot argue that he would be prejudiced by an order enforcing the arbitration clause. Indeed, in *Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 833 F.2d 545 (5th Cir.1987), relying on an earlier case, *Noble v. Drexel, Burnham, Lambert, Inc.*, 823 F.2d 849 (5th Cir.1987), the Court of Appeals held that the repeal of Rule 15c2–2 should be applied retroactively to pending cases. In both cases, the Court of Appeals cited "the usual rule that federal cases should be decided in accordance with the law as it exists at the time of decision." *Villa Garcia*, 833 F.2d at 547; *Noble*, 823 F.2d at 851.[7]

■ *Villa Garcia* and *Noble* limited their discussion to the question whether the respective plaintiffs could justify a departure from the "usual rule" by showing that they had relied to their detriment on prior law. *Villa Garcia*, 833 F.2d at 547–48; *Noble*, 823 F.2d at 850–51. The test applied in that context,[8] however, is inadequate in cases, such as this, where parties who have acted in defiance of prior law seek relief that they could not have obtained had they complied with prior law. By entering into an agreement with plaintiff to arbitrate all claims except those for which federal securities laws provide an "express right of action," Evans & Co. flouted a regulation, then valid, labeling

---

**7.** *Villa Garcia*, like the present case, concerned an agreement that appeared to require the arbitration of all claims, in violation of Rule 15c2–2. *Noble* involved substantially similar facts, but did not specify whether the parties entered into the agreement while Rule 15c2–2 was in effect— that is, after November 28, 1983. In *Chang v. Lin*, 824 F.2d 219 (2d Cir.1987), on the other hand, the arbitration agreement was entered into prior to the promulgation of Rule 15c2–2. Although Rule 15c2–2 required that, where the arbitration agreement was entered into prior to its promulgation, the broker give notice to its customer of his right not to submit federal securities claims to arbitration, *see* 17 C.F.R. § 240.15c2–2(c), no allegation was made that the broker in *Chang* failed to give such notice. 824 F.2d at 219 n. 2. The Court of Appeals for the Second Circuit, therefore, found it unnecessary to address the enforceability of an agreement to arbitrate entered into after the promulgation of Rule 15c2–2.

**8.** "Once it has been determined that a decision has 'establish[ed] a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed,' the Court has gone on to examine the history, purpose, and effect of the new rule, as well as the inequity that would be imposed by its retroactive application. *Id.* [*Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) ], at 106–107, 92 S.Ct., at 355–356. See also *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 499, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231 (1968)." *United States v. Johnson*, 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202 (1982).

such conduct "fraudulent, manipulative or deceptive." Neither the Supreme Court's decision in *McMahon* nor the ensuing rescission of Rule 15c2–2 make such an agreement enforceable. On the contrary, "an agreement that is illegal by statute or on the grounds of public policy when made is not rendered legal by repeal of the statute or change in the public or legislative policy." *Palmisano v. United States Brewing Co.*, 131 F.2d 272, 273 (10th Cir. 1942); *see also Hannay v. Eve*, 7 U.S. (3 Cranch) 242, 248, 2 L.Ed. 427 (1806); *Rutkin v. Reinfeld*, 229 F.2d 248, 256 (2d Cir.), *cert. denied sub nom. Kaplow v. Reinfeld*, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956); *Licznerski v. United States*, 180 F.2d 862, 865–66 (3d Cir.), *cert. denied*, 339 U.S. 987, 70 S.Ct. 1009, 94 L.Ed. 1389 (1950); Restatement (Second) of Contracts § 179 comment d (1981); Annotation, *Validity and Enforceability of Contract Which Was Contrary to Statute or Public Policy When Made, As Affected by Subsequent Change of Law*, 126 A.L.R. 685 (1939). *But see Deutsch v. Health Ins. Plan of Greater New York*, 751 F.2d 59, 67 (2d Cir.1984) (applying New York law).[9]

The fact that plaintiff was not prejudiced by the defendants' conduct is not material. The purpose of denying enforcement of the agreement is not to protect plaintiff; it is to encourage compliance with law. Judge William Clark said it well in *Fitzsimons v. Eagle Brewing Co.*, 107 F.2d 712 (3d Cir. 1939), when he wrote in a similar context:

The appellant urges that the validity of the agreement does not depend upon the law at the time it was made. In so doing, he runs counter to the overwhelming weight of authority. 6 Williston on Contracts, sec. 1758, ... 12 Amer.Jur. sec. 165; 15 Amer. & Eng.Ency. of Law (2nd Ed.) p. 942; 2 Restatement of Contracts, sec. 609, p. 1128.... We cannot understand any other view. By definition your purpose is to discourage action deemed harmful. You are not interested in the consequences of acts but in the mental processes of the actor. Those

processes precede both the acts and a fortiori their consequences and the relevant state of law is that existing at the time of the processes and not at the time of the consequences. The law breaking mens rea has reference to the time of contemplated breach. The medicine tastes nasty when it is swallowed.

107 F.2d at 713–14.

This rule was followed by the Court of Appeals for the Second Circuit in a closely analogous case, *Aaacon Auto Transport, Inc. v. State Farm Mutual Auto Ins. Co.*, 537 F.2d 648 (2d Cir.), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977). The issue there turned on the validity of an arbitration clause in a bill of lading that was incorporated by reference in an agreement entered into on June 20, 1982, between Aaacon Auto Transport, Inc. and Joseph Romagnoli. Prior to the date of the agreement, the tariff upon which the bill of lading was based—specifically the arbitration clause—had been disapproved by the Interstate Commerce Commission. One of the arguments made in support of Aaacon's action to enforce the arbitration clause was that, subsequent to the signing of the agreement, the ICC had approved the tariff incorporating the bill of lading, including the disputed arbitration clause. In rejecting this argument, the Court of Appeals observed:

[A]ny action taken by the Commission subsequent to the date on which Romagnoli and Aaacon entered into the contract [containing a then invalid arbitration clause] could provide no relief to appellee in this litigation. We hold that, as of June, 1972, when Romagnoli signed the agreement with Aaacon purportedly incorporating the bill of lading on the reverse side, the tariff upon which that bill of lading was based had been rejected by the ICC and was therefore void under 49 U.S.C. § 317(a).

537 F.2d at 658.

There is good reason to apply the same rule here. One of the principal considera-

---

**9.** This case is not governed by New York law. "Federal law applies to enforcement of a duty to arbitrate, whenever interstate commerce is involved." *Guinness–Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 472 (2d Cir.1980).

tions underlying the willingness of the Supreme Court to validate pre-dispute arbitration clauses in cases such as this is the fact that the SEC has been vested with "expansive power to ensure the adequacy of arbitration procedures" employed by the national securities exchanges and registered securities associations. *Shearson/American Express, Inc. v. McMahon,* —— U.S. at ——, 107 S.Ct. at 2341. A party subject to the regulations promulgated by the SEC should understand that it is not free to disregard them simply because it views those regulations to be unwise or erroneous.

If, as defendants argue, Justice White's concurrence in *Byrd* gave them reason to doubt the validity of Rule 15c2–2, Evans & Co. could have challenged the regulation, without violating it, by commencing an appropriate judicial proceeding. *See Independent Broker–Dealers' Trade Ass'n v. SEC,* 442 F.2d 132, 142–43 (D.C.Cir.1971) (judicial review available through equity action or by action under Administrative Procedure Act); *R.A. Holman & Co. v. SEC,* 299 F.2d 127, 130 (D.C.Cir.), *cert. denied,* 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962) (declaratory judgment available). Moreover, even if such a direct challenge were not possible or practical, Evans & Co. could have given the SEC and its customers notice that it was altering the language of the arbitration clause in a manner inconsistent with Rule 15c2–2. This notice would have given the SEC the option of taking action to enforce Rule 15c2–2 and would have apprised customers of the possibility that the revised arbitration clause was unenforceable. *See supra,* n. 5. Instead, Evans & Co. rewrote its customer agreement unilaterally. Such conduct should be deterred, rather than encouraged by an order granting Evans & Co. specific performance of the arbitration clause.

The suggestion has been made that denying enforcement of the arbitration clause in these circumstances punishes Evans & Co. because its interpretation of the Exchange Act turned out to be right. On the contrary, Evans & Co. is being "punished" not because its interpretation of the Exchange Act turned out to be right but because it

was wrong to have violated Rule 15c2–2 while the regulation was still in effect. Moreover, the "punishment" in this case is a fair trial in accordance with the procedures generally available for the resolution of disputes. Depriving Evans & Co. of the forum that it attempted to secure by engaging in what was at the time regarded as "a fraudulent, manipulative or deceptive act" is a minimal sanction that "will best promote the primary objective of the federal securities laws—protection of the investing public and the national economy through the promotion of 'a high standard of business ethics ... in every facet of the securities industry,'" *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 315, 105 S.Ct. 2622, 2631, 86 L.Ed.2d 215 (1985) (quoting *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 186–87, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963)).

Accordingly, the motion to stay the proceedings in this matter and to compel arbitration of the claims arising under the Exchange Act is denied. The motion is granted to the extent it seeks to compel arbitration of the pendent common law claims.

SO ORDERED.