**VINCENT R. IACONO, M.D., INC., Vincent R. Iacono, Individually and as Trustee of the Vincent R. Iacono, Inc. Profit Sharing Trust, and as Trustee for the Vincent R. Iacono, Inc. Pension Trust**

v.

**DREXEL BURNHAM LAMBERT, INC., and Edward A. Ricci.**

Civ. A. No. 88-0686 L.

United States District Court, D. Rhode Island.

June 8, 1989.

Paul V. Curcio of Adler Pollock & Sheehan, Inc., Providence, R.I., for plaintiffs.

Jerome Gotkin and Sally A. VanderWeele of Widett, Slater & Goldman, Boston, Mass., Herbert DeSimone, Jr. of DeSimone & Leach, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on defendants' motion to stay proceedings pending arbitration pursuant to section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. Vincent R. Iacono is an investor who alleges that his broker and brokerage house have violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5; portions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.;[1] and provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. In addition, plaintiffs make several state law claims.

Plaintiffs' causes of action arise out of investment dealings conducted pursuant to brokerage agreements. These agreements contain pre-dispute arbitration clauses which mandate that any dispute arising out of investment activity between the parties will be determined by arbitration. The arbitration clauses contain some exceptions that are not implicated here. In reliance on these provisions, defendants have moved to stay this litigation pending arbitration.

---

1. In their complaint, plaintiffs frequently provide the wrong citation for ERISA by indicating that is it located in Title 15 of the United States Code. However, ERISA is actually found in Title 29.

Plaintiffs argue that the arbitration clauses are void and unenforceable because they violated a Securities and Exchange Commission ("SEC") rule at the time of their execution. The SEC rule, Rule 15c2–2, 17 C.F.R. § 240.15c2–2 (1987), has since been rescinded in light of recent, contrary United States Supreme Court authority. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). While not admitting that the arbitration clauses violated Rule 15c2–2 at the time of contracting, defendants claim that whatever legal effect Rule 15c2–2 may once have exerted, that has been dissipated by *McMahon*.

In essence this case may properly be characterized as follows. Plaintiffs agreed in their brokerage contracts to arbitrate future disputes arising from their relationship with defendants. The arbitration clauses clearly would be legal if signed today. Notwithstanding their promise, plaintiffs now seek to avoid arbitration on the ground that Rule 15c2–2 rendered the clauses illegal in the past, and, although the Supreme Court has rejected the premise of Rule 15c2–2 and the SEC has since rescinded it, the arbitration clauses are thus not binding.

Particularly in reliance on *Rodriquez de Quijas v. Shearson/American Express, Inc.*, — U.S. —, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), and also based on common sense, this Court holds that plaintiffs should not be released from their promise to arbitrate disputes arising under their brokerage agreements based on a rescinded and repudiated SEC rule. Therefore, defendants' motion to stay proceedings should be granted and this matter should be submitted to arbitration.

## BACKGROUND

The plaintiffs in this suit are a doctor, Vincent R. Iacono, and three business entities that he controls—Vincent R. Iacono, Inc.; Vincent R. Iacono, M.D., Inc. Profit Sharing Trust; and Vincent R. Iacono, M.D., Inc. Pension Fund. Drexel Burnham Lambert, Inc. ("Drexel"), an investment services corporation, and one of its brokers, Edward Ricci ("Ricci"), comprise the defendants to plaintiffs' complaint.

During 1983 and 1984 plaintiffs opened four securities accounts at Drexel, one for each plaintiff, with Ricci acting as registered representative. Iacono, for himself and as agent for his three business entities, signed various Customer Agreements and discretionary Trading Authorization forms with Drexel from 1983 to 1987. These contracts contained arbitration clauses providing that all controversies arising between the parties concerning any transaction or the construction, performance or breach of any agreement between the parties shall be subject to binding arbitration.[2] In addition, the contracts also contained an exclusion from the arbitration provision for certain causes of action brought under the federal securities laws. The operative exclusion,[3] which Drexel began to employ in the 1986 contracts, provides that "[t]he following agreement to arbitrate does not apply to any controversy for which a remedy may exist pursuant to an *express* right of

---

**2.** The 1986 Trading Authorization and Customer Agreement arbitration clauses read in part as follows:

The undersigned agrees, and by carrying an account for the undersigned you agree that all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

**3.** Drexel altered the coverage of its arbitration exclusion clauses between 1983 and 1986. The changes apparently were made due to developments in securities law and an SEC no-action letter dated March 22, 1984. Originally the arbitration clauses excluded controversies arising under both *express* and *implied* causes of action under the federal securities laws. However, Drexel dropped the exclusion for implied actions by 1986. Since the arbitration clauses provide that they apply to all controversies arising under any agreement, be it a prior or a subsequent agreement, between the parties, the effective arbitration agreement is the 1986 clause. This applies to all claims save those arising under an express right of action under the federal securities laws. Therefore, implied causes of action such as 10b–5 actions must be arbitrated.

action under the federal securities laws." (emphasis added).

Plaintiffs have not brought a claim pursuant to an express right of action under the securities laws. Their only federal securities law action is a Rule 10b–5, implied right of action. Since the arbitration clauses cover all controversies except those arising pursuant to an express right of action under the federal securities laws, and since none of plaintiffs' claims fall into this category, all claims in the instant complaint are covered by the arbitration clauses.

On December 6, 1988 plaintiffs filed a nine-count complaint against Drexel and Ricci. Plaintiffs allege that over almost four years Ricci "churned" their accounts by engaging in grossly excessive trading activity in order to generate commissions for Drexel and himself. Moreover, plaintiffs allege that Ricci wrongfully transferred funds from the Pension Fund to Iaconno's personal account by means of a written direction bearing the forged signature of Iacono. In their complaint, plaintiffs claim that defendants' conduct violated Rule 10b–5 and § 10(b) of the Securities Exchange Act of 1934, RICO, ERISA, and various state legal principles pertaining to misrepresentation, fraud and breach of fiduciary duty. Therefore, plaintiffs pray for over $500,000 in compensatory damages, over $1,500,000 in treble damages and over $20,000,000 in punitive damages under various counts.

On December 23, 1988 Drexel and Ricci filed a motion to stay proceedings pursuant to § 3 of the Federal Arbitration Act, 9 U.S.C. § 3. Defendants argue that this action should be stayed so that the claims made by plaintiffs may be resolved through arbitration in accordance with the parties' arbitration agreements. Plaintiffs objected on the ground that the arbitration agreements are void and unenforceable because of former SEC Rule 15c2–2.

On February 10, 1989 the parties engaged in oral argument over the viability of the arbitration clauses. This Court took the matter under advisement and it is now in order for decision.

## DISCUSSION

■ This Court determines that defendants' motion to stay the proceedings in this matter pending arbitration should be granted. The pre-dispute arbitration agreements contained in the parties' Trading Authorizations and Customer Agreements are valid and binding on plaintiffs.

In challenging their arbitration agreements, plaintiffs have argued that the clauses violated SEC Rule 15c2–2 at the time that they were executed. The agreements allegedly violated Rule 15c2–2 by subjecting controversies under the Securities Exchange Act of 1934 ("1934 Act") to arbitration. However, the SEC has rescinded Rule 15c2–2. Moreover, the United States Supreme Court has recently held that pre-dispute arbitration clauses subjecting claims arising as implied causes of action under the 1934 Act, and indeed those arising as express causes of action under the Securities Act of 1933 ("1933 Act"), are valid. Nonetheless, plaintiffs argue that the arbitration agreements here were void when signed and continue to be void and unenforceable due to former Rule 15c2–2.

The issue of whether or not the arbitration agreements violated Rule 15c2–2 is moot because the rule no longer has any effect on arbitration clauses no matter when they were executed. A number of United States Courts of Appeal have held that the Supreme Court ruling in *Shearson/American Express, Inc. v. McMahon, supra,* which upheld the legality of pre-dispute arbitration clauses for controversies arising under § 10(b) of the 1934 Act, should be applied "retroactively" to validate arbitration clauses executed prior to the *McMahon* decision. Moreover, the Supreme Court itself recently held that its decision, finding pre-dispute arbitration clauses for claims arising under the 1933 Act enforceable, should be applied retroactively to give effect to similar clauses executed prior to its ruling. *Rodriquez de Quijas v. Shearson/American Express, Inc., supra.* By analogy to *Rodriquez,* the *McMahon* decision holding that pre-dispute arbitration clauses are enforceable for controversies arising under Rule 10b–5 should

also be applied retroactively to support the arbitration agreement in the instant dispute.

A historical survey of judicial and SEC treatment of pre-dispute arbitration clauses concerning controversies arising under the 1933 and 1934 Acts is instructive at this juncture. In 1953, the Supreme Court held that private parties cannot agree to arbitrate controversies arising under § 12(2) of the 1933 Act. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168. Subsequently, the Second, Third, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuits extended *Wilko* to bar arbitration of disputes arising under the 1934 Act, specifically those brought pursuant to Rule 10b-5. *Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 806 F.2d 291, 295 (1st Cir.1986). To the contrary the Eighth Circuit and the First Circuit have held that controversies under the 1934 Act are arbitrable. *See Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 795 F.2d 1393 (8th Cir.1986); *Page*, 806 F.2d at 295.

In 1983, the SEC promulgated Rule 15c2-2. *Villa Garcia v. Merrill Lynch*, 833 F.2d 545, 547 (5th Cir.1987). Rule 15c2-2 provided in pertinent part that:

> [i]t shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

Rule 15c2-2, 17 C.F.R. § 240.15c2-2 (1987) (as cited in *Gugliotta v. Evans & Co., Inc.*, 690 F.Supp. 144, 145 (E.D.N.Y.1988)).

In 1986 the Court of Appeals for the First Circuit issued its opinion in *Page v. Moseley, Hallgarten, Eastabrook & Weeden, supra.* In that decision, the Court held that pre-dispute agreements to arbitrate 1934 Act claims, such as Rule 10b-5 claims, are enforceable. 806 F.2d at 295. Significantly, the First Circuit wholly ignored Rule 15c2-2.

The next year the Supreme Court decided the case of *Shearson/American Express, Inc. v. McMahon, supra.* In *McMahon,* the Court held pre-dispute arbitration agreements governing controversies arising under the 1934 Act are not barred by that Act. Therefore, the *McMahon* Court ruled that agreements to arbitrate 1934 Exchange Act claims should be enforced in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. 482 U.S. at 236–238, 107 S.Ct. at 2343. Moreover, the Court attached little importance to Rule 15c2-2. Accepting the proposition advanced by the SEC in its amicas curiae brief that Rule 15c2-2 was " 'premised on the Commission's assumption, based on court of appeals decisions following *Wilko,* that agreements to arbitrate Rule 10b-5 claims were not, in fact, arbitrable,' " (sic) the Court found that the "SEC's actions therefore do not cast any additional light on the question of the arbitrability of Exchange Act claims." 482 U.S. at 234, n. 3, 107 S.Ct. at 2341, n. 3. Therefore, compliance with Rule 15c2-2 was of no relevance in *McMahon* and the Court upheld the validity of agreements to arbitrate claims under the 1934 Act despite the SEC's rule.

Shortly after the *McMahon* decision, the SEC rescinded Rule 15c2-2 through a release entitled "Rescission of Rule Governing Use of Predispute Arbitration Clauses in Broker–Dealer Customer Agreements." Release No. 34–25034, 52 Fed.Reg. 39, 216, (October 15, 1987). The SEC found that "[i]n light of [*MaMahon* ] the Commission believes that Rule 15c2-2 is no longer appropriate or accurate and, accordingly, should be rescinded." *Id.* The SEC also noted that the *McMahon* decision "raised questions regarding the continuing vitality of [*Wilko v. Swan* ]." *Id.*

Thus at the end of 1987, the Supreme Court had ruled that pre-dispute arbitration clauses governing 1934 Act controversies are enforceable, the SEC had rescinded Rule 15c2-2, and the *Wilko* holding that 1933 Act controversies are not arbitrable appeared ready to fall.

After *McMahon,* a number of federal courts considered whether the Supreme

Court's decision should be applied retroactively. Phrased another way, more than a few courts had to determine whether rescinded Rule 15c2–2 still exerted any legal influence from its administrative grave. The decisions in a substantial majority of these cases support defendants' contention that the parties' arbitration clauses should be enforced.

■ At the outset, it should be noted that a strong federal policy exists in favor of enforcing arbitration clauses. As the Supreme Court noted in *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Federal Arbitration Act "requires that [the Court] rigorously enforce agreements to arbitrate." *Id.* at 221, 105 S.Ct. at 1242.

In *Noble v. Drexel, Burnham, Lambert, Inc.*, 823 F.2d 849 (5th Cir.1987), the Court of Appeals ruled that *McMahon* should be given retroactive effect so as to legitimize agreements to arbitrate 1934 Exchange Act disputes that were executed prior to the *McMahon* decision. Moreover, the *Noble* Court also discussed the concept of "retroactive" application of judge-made law and noted that the term is somewhat misleading. "The new law is applied prospectively—that is, to decisions handed down after the new law is announced—but it has retroactive effects, because for a time parties come before the courts with controversies that unfolded while the old law was the standard for their behavior," the Court observed. 823 F.2d at 850 n. 2. Later that same year, in a case very similar to the instant dispute, the Fifth Circuit again examined the effect that rescinded Rule 15c2–2 should be given. *Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 833 F.2d 545 (5th Cir.1987). It once more concluded that "the rescission of the Rule should be applied retroactively," and therefore held that Rule 15c2–2 did not render the parties' arbitration agreement unenforceable. *Id.* at 548.

The Ninth Circuit and the Eleventh Circuit have followed the Fifth Circuit's lead and held that agreements to arbitrate disputes under the 1934 Act are enforceable. *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282 (9th Cir.1988); *Adrian v. Smith Barney, Harris, Upham & Co., Inc.*, 841 F.2d 1059 (11th Cir.1988). In *Adrian* the Eleventh Circuit viewed the issue as follows:

> In essence the plaintiffs ask us to void the arbitration clauses in their contracts with Smith Barney on the basis of a regulation that no longer exists. We choose instead to follow the Fifth Circuit in holding that the rescission of Rule 15c2–2 should be applied retroactively. Thus whatever effect Rule 15c2–2 may have had before its rescission, it can no longer be used as a defense to arbitration.

841 F.2d at 1061–62 (citation omitted).

Against this backdrop of unfavorable case law, plaintiffs cling to the analysis followed by the District Court for the Eastern District of New York in *Gugliotta v. Evans & Co., Inc.*, 690 F.Supp. 144 (E.D.N.Y.1988). The *Gugliotta* Court held that, notwithstanding *McMahon* and the rescission of 15c2–2, arbitration clauses entered into while Rule 15c2–2 was in effect are void and unenforceable because they violated the law in the past. *Id.* at 149. Specifically, it reasoned that since the agreement in question was illegal in the past, it could not be rendered legal by a change in the law. *Id.* at 148–49. The *Gugliotta* Court has been proven wrong by the recent Supreme Court case of *Rodriquez de Quijas v. Shearson/American Express, Inc., supra.*

*Rodriquez* sounds the death knell for plaintiffs' argument that their arbitration agreements are void and unenforceable. In *Rodriquez* the Supreme Court explicitly overruled *Wilko* and held that controversies arising under the 1933 Act are arbitrable. *Rodriquez*, —— U.S. at ——, 109 S.Ct. at 1919. Moreover, the *Rodriquez* Court held that its decision should be applied retroactively so as to validate existing arbitration agreements. *Id.* at ——, 109 S.Ct. at 1922.

In ruling that the *Rodriquez* decision should be given retroactive effect, the Court observed:

Petitioners argue finally that if the Court overrules *Wilko,* it should not apply its ruling retroactively to the facts of this case. We disagree.... Although our decision to overrule *Wilko* establishes a new principle of law for arbitration agreements under the Securities Act, this ruling furthers the purposes and effect of the Arbitration Act without undermining those of the Securities Act. Today's ruling, moreover, does not produce "substantial inequitable results," for petitioners do not make any serious allegation that they agreed to arbitrate future disputes relating to their investment contracts in reliance on *Wilko's* holding that such agreements would be held unenforceable by the courts. Our conclusion is reinforced by our assessment that resort to the arbitration process does not inherently undermine any of the substantive rights afforded to petitioners under the Securities Act.

*Id.* at ——, 109 S.Ct. at 1922 (citation omitted).

Were this all that *Rodriquez* said it would certainly be sufficient authority to justify, by analogy, a holding that *McMahon* should be applied retroactively to compel enforcement of arbitration agreements affecting 1934 Act controversies. However, in *Rodriquez* the Supreme Court emphasized that arbitration clauses affecting causes of action under the 1933 and 1934 Acts should be treated similarly. The Court emphasized "the principle that the 1933 and 1934 Acts should be construed harmoniously." *Id.* at ——, 109 S.Ct. at 1918. Divergent treatment of 1933 Act and 1934 Act controversies would lead to arbitrary and inefficient results. "In this case, for example," the *Rodriquez* majority observed, plaintiffs' "claims under the 1934 Act were subjected to arbitration, while their claim under the 1933 Act was not permitted to go to arbitration." *Id.* The Court found that such a "result makes little sense for similar claims, based on similar facts, which are supposed to arise within a single federal regulatory scheme." *Id.* Therefore, the *McMahon* decision, holding that arbitration agreements for 1934 Act controversies are enforceable, should be applied retroactively.

## CONCLUSION

Plaintiffs agreed, with one exception, that any controversy arising from their contractual relationships with Drexel and Ricci would be resolved through arbitration. Under *McMahon* and *Rodriquez* the parties' arbitration agreements are not, as plaintiffs argue, void and unenforceable under rescinded Rule 15c2–2. Therefore, defendants' motion to stay these proceedings pending arbitration must be granted. *It is so Ordered.*