871 F.2d 292
 57 USLW 2588, 10 Employee Benefits Ca 2194
 Frank L. BIRD, Trustee of the Frank L. Bird Profit Sharing
Trust, Frank L. Bird, Individually, and Joan Shea,
Plaintiffs-Appellees,
v.
SHEARSON LEHMAN/AMERICAN EXPRESS, INC., and Raymond R.
Clements, Defendants-Appellants.
 No. 498, Docket 88-7704.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 3, 1989.
Decided March 28, 1989.
 
 Donald R. Holtman, Hartford, Conn. (Lester A. Katz, Katz & Seligman, Hartford, Conn., of counsel), for plaintiffs-appellees.
 Jeffrey L. Friedman, New York City (Theodore A. Krebsbach, Shearson Lehman Hutton Inc., Office of the General Counsel, New York City, of counsel), for defendants-appellants.
 Before KAUFMAN, TIMBERS, and CARDAMONE, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 We are asked to determine whether a statutory claim created by the Employee Retirement Income Security Act (ERISA) is subject to compulsory arbitration. Because Congress envisioned a judicial forum, particularly a federal court, as the central arena for implementing ERISA's underlying purpose--providing maximum protection to pension plan participants and beneficiaries--we hold that statutory ERISA claims are not compulsorily arbitrable.
 
 
 2
 Briefly, the background of this case is as follows. Appellants, Shearson Lehman/American Express ("Shearson")[1] and Raymond Clements, a Shearson Vice President, allegedly solicited Frank L. Bird, as trustee of the Frank L. Bird Profit Sharing Trust (the "Trust" or "Pension Plan"), to invest the assets of the Trust with them. Like his co-appellee, Joan Shea, Bird is also a participant and beneficiary of the Trust. Bird claims that during the first meeting with Clements, he emphasized that, because the Trust was a retirement fund, its investment objectives were long-term growth and safety of the corpus. Clements allegedly also knew that Bird was an unsophisticated investor who would rely on Shearson's skill and experience in investing securities.
 
 
 3
 Upon opening the account, Bird, in his capacity as trustee, signed Shearson's standard "Customer's Agreement." The contract contained a broad arbitration clause, under which Shearson's clients foreswore recourse to the courts.[2] Bird invested assets of the Trust totalling $62,205.56. After 55 transactions over a 22 month period, it is alleged the account entrusted to Clements and Shearson dwindled to a value of $13,427.53. Many of the purchases and sales, it is claimed, included high risk investments such as airline securities, warrants, and options. Each transaction generated commissions for appellants and some yielded interest on margin advances.
 
 
 4
 Specifically, the complaint charged that appellants' conduct constituted a breach of fiduciary duties under ERISA, 29 U.S.C. Sec. 1104, and "churning," excess trading of an account in violation of Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j, and Rule 10b-5, 17 C.F.R. Sec. 240-10b-5. Instead of submitting the claims to arbitration, appellees brought this action in the District of Connecticut.[3] On the basis of the arbitration provision, Clements and Shearson moved to stay the district court proceedings pending arbitration of the ERISA and securities claims.
 
 
 5
 In a ruling from the bench, Judge Cabranes found that because the arbitration clause was valid and binding upon Bird and Shea, the claims asserted pursuant to the 1934 Act were to be resolved by arbitration. The court determined, however, that the arbitration provision did not obligate appellees to arbitrate the ERISA claim.[4] We are of the view that claims asserting substantive ERISA violations can be brought in a federal forum notwithstanding an agreement to arbitrate.
 
 
 6
 Before reaching the arbitrability of ERISA claims, we consider other contentions of the parties. In Genesco, Inc. v. Kakiuchi & Co., 815 F.2d 840 (2d Cir.1987), we set forth the factors to be considered on an application to compel arbitration. We must determine whether a valid arbitration agreement existed and, if so, the scope of that agreement. Id. at 844. Then, an assessment is made whether Congress intended the applicable claims to be nonarbitrable. Id. If only some of the claims are arbitrable, the court decides whether to stay the balance of the proceedings pending arbitration. Id.
 
 
 7
 We agree with the district court's determination that a valid arbitration agreement which bound all the parties continued in being. Seeking to free non-signatories from the terms of the customer agreement, appellees argued that Bird lacked the authority to compel all of the participants and beneficiaries of the Trust to abide by the arbitration clause. The court properly noted, however, that Bird, as trustee, could bind all participants and beneficiaries of the Trust to arbitration of "any controversy arising out of or relating to" the Trust. See Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 938 (3d Cir.1985); Fisser v. Int'l Bank, 282 F.2d 231, 233-34 (2d Cir.1960).
 
 
 8
 The Supreme Court recently determined that the legislative intent underlying the Securities Exchange Act of 1934 did not bar compulsory arbitration of securities claims pursuant to section 10(b). Shearson Lehman/American Express v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Accordingly, we affirm the district court's decision to compel arbitration of appellees' securities claims.[5]
 
 
 9
 We now turn to the question whether Congress intended to afford non-waivable access to a federal court for those asserting statutory violations of ERISA. In considering this issue, a discussion of the development of arbitrability doctrine will be helpful.
 
 
 10
 Although the Federal Arbitration Act, 9 U.S.C. Secs. 1-14 (1988) ("Arbitration Act"), is "a congressional declaration of a liberal federal policy favoring arbitration agreements," Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), it is, nevertheless, subject to a showing "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." McMahon, 482 U.S. at 225, 107 S.Ct. at 2336. The arbitrability of statutory claims is thus essentially a question whether, in enacting the statute upon which the claim is based, Congress intended the federal courts to be the exclusive forum for resolving disputes of substantive rights.
 
 
 11
 The requisite intent "will be deducible from [the act's] text or legislative history," Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985), or "from an inherent conflict between arbitration and the statute's underlying purposes." McMahon, 482 U.S. at 225, 107 S.Ct. at 2336. The burden of demonstrating this intent is on the party opposing arbitration. Id.
 
 
 12
 When enacting remedial legislation, Congress has limited or prohibited waiver of a judicial forum. Most often these injunctions occur in statutes designed to provide minimum substantive guarantees. See, e.g., Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 737, 101 S.Ct. 1437, 1443, 67 L.Ed.2d 641 (1981). In Barrentine, the Supreme Court concluded that claims asserted pursuant to minimum wage provisions of the Fair Labor Standards Act were not compulsorily arbitrable and could be maintained in federal court, notwithstanding an arbitration clause in the underlying collective bargaining agreement and an adverse ruling by a neutral arbitrator. 450 U.S. 728, 101 S.Ct. 1437. The Court declared: "[D]ifferent considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." Id. at 737, 101 S.Ct. at 1443.
 
 
 13
 In making this statement, Justice Brennan referred to policy considerations espoused by Justice Powell, writing for a unanimous Court in Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Despite an adverse arbitration decision, the Court held an individual could bring a wrongful termination claim under Title VII of the Civil Rights Act of 1964. Id. Justice Powell stated: "The purposes and procedures of Title VII indicate that Congress intended federal courts to exercise final responsibility for enforcement of Title VII; deferral to arbitral decisions would be inconsistent with that goal." Id. at 56, 94 S.Ct. at 1023. Indeed, he noted, "[t]his conclusion rests first on the special role of the arbitrator, whose task is to effectuate the intent of the parties rather than the requirements of enacted legislation." Id. at 56-57, 94 S.Ct. at 1023-24. The remedial intent of Congress tempers the right to privately order one's affairs.
 
 
 14
 In a more recent and unanimous pronouncement, the high court concluded that federal courts were not to accord preclusive effect to unappealed arbitration awards in suits brought pursuant to 42 U.S.C. Sec. 1983. McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). Justice Brennan offered a partial list of considerations supporting the Court's conclusion: an arbitrator may not possess the requisite expertise "to resolve the complex legal questions that arise in Sec. 1983 actions"; because an arbitrator's authority derives solely from the contract, he may not have the authority to enforce Sec. 1983; when the union has control over the grievance procedure, the interests of the union and those of the individual employee may conflict; and "arbitral factfinding is generally not equivalent to judicial factfinding." Id. at 290-91, 104 S.Ct. at 1803-04. These considerations illustrate the multifaceted concerns underlying Congress's desire to allow resolution of certain federal substantive rights in an Article III forum.[6]
 
 
 15
 Prior to the establishment of ERISA, pension issues were generally held arbitrable. See Schneider, Surviving ERISA Preemption: Pension Arbitration in the 1980's, 16 Colum.J.L. & Soc.Probs. 269, 276-77 (1980). But, in response to injustices in the treatment of pension plan participants, Congress created a federal legal remedy. The text of ERISA enumerates several of the most prominent problems and concerns. Congress determined that:
 
 
 16
 ... [M]any employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits....
 
 
 17
 29 U.S.C. Sec. 1001(a).
 
 
 18
 The source of these ills, in the statute's words, was often "the lack of employee information and adequate safeguards concerning ... operation" of the plans. Id.
 
 Consequently, Congress stated:
 
 19
 It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts. [Emphasis added].
 
 
 20
 29 U.S.C. Sec. 1001(b) (1982).
 
 
 21
 The federal courts have consistently interpreted ERISA as a remedial statute designed to "curb the funding and disclosure abuses of employee pension and welfare benefit plans by establishing minimum federal standards." Taggert Corp. v. Efros, 475 F.Supp. 124 (D.Tx.1978). In Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 914 (2d Cir.1982), we stated, "A reading of the statute's legislative history compels the conclusion that ERISA's purpose is to secure guaranteed pension payments to participants by insuring the honest administration of financially sound plans." See, e.g., United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada Local 198 AFL-CIO Pension Plan v. Myers, 488 F.Supp. 704 (M.D.La.1980), aff'd, 645 F.2d 532 (5th Cir.1981).
 
 
 22
 In addition to the panoply of substantive rights and protections, Federal court access for pension claimants and beneficiaries was explicitly included as a key ingredient of the solution. That Congress envisioned the federal courts as the central forum for enforcement of the statute is the inescapable conclusion from the plain meaning of the wording of ERISA. Section 1001(a) unequivocally stated that to enforce its substantive terms, ERISA mandated "ready access to the federal courts." Access to a federal judicial forum has been construed as essential to assuring the minimum standards guaranteed pension participants by ERISA. See Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 941 (3d Cir.1985) ("[statutory ERISA] rights may not be foreclosed by a contractual arbitration agreement."); Amaro v. Continental Can Co., 724 F.2d 747, 752 (9th Cir.1984) ("[w]e do not believe Congress intended that these minimum standards [set forth in ERISA] could be eliminated by contract."); Senco of Florida, Inc. v. Clark, 473 F.Supp. 902 (M.D.Fla.1979) (intent of Congress in enacting [ERISA] was to protect employees and their families from bargaining away benefits provided by pension plans); Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 431 F.Supp. 271 (E.D.Pa.1977) ("in passing ERISA Congress intended to protect plan participants from arbitration and similar agreements, often unilaterally imposed, which 'snip and whittle' at federally granted rights").
 
 
 23
 ERISA's liberal provisions governing service of process, venue, attorney fees and statutes of limitation also provide persuasive evidence that Congress intended disputes under the statute to be resolved in a federal judicial forum. Cf., Barrentine, 450 U.S. at 740, 101 S.Ct. at 1444. Section 1132(a)(3) specifically empowers any participant or beneficiary of a plan to bring a civil action for any violation of the statute, including breach of fiduciary duties imposed by 29 U.S.C. Sec. 1104. Moreover, a wide choice of venue is allowed. 29 U.S.C. Sec. 1132(e)(2). There are no diversity or amount in controversy requirements. Id. at Sec. 1132(f). Courts may award attorneys fees to successful participants and beneficiaries. Id. at Sec. 1132(g). And, under some circumstances, the Secretary of Labor may maintain an action on behalf of a participant or beneficiary. Id. at 1132(a)(5) & (b)(1). Congress clearly sought to lower the barriers that might otherwise restrict access to the federal courts.
 
 
 24
 These jurisdictional provisions also distinguish between suits brought to redress violations of substantive provisions of ERISA and actions to declare the rights of those covered and benefits due under a particular pension plan. Claims which are basically issues of contract law are within the concurrent jurisdiction of federal and state courts, while violations of the ERISA statute itself are exclusively the province of the federal courts. See 29 U.S.C. Sec. 1132(e). Although this division indicates that not every dispute concerning an ERISA regulated plan must be heard in federal court, it in no way obfuscates the clarity of Congress's intent to make a judicial forum available.
 
 
 25
 In Barrowclough v. Kidder, Peabody & Co., the Third Circuit concluded that in enacting Sec. 1132(e), Congress intended to follow the model of Sec. 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Sec. 185 (1978), which governs suits arising under a collective-bargaining agreement. 752 F.2d at 936. Indeed, the House Conference Report refers to Sec. 301 in outlining the proposed structure of Sec. 1132(e).[7] Section 301 provides that the applicable law for the breach of a collective bargaining agreement is federal common law. See Local 174 Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 101-04, 82 S.Ct. 571, 575-77, 7 L.Ed.2d 593 (1962). The importance of federal labor policy and the necessity for uniformity of its application made the development of federal law governing such disputes imperative. Id. at 103-04, 82 S.Ct. at 576-77. With the prologue that Congress deemed employee pension plan law "affected with a national public interest," 29 U.S.C. Sec. 1001(a), the same reasoning requires the development of federal common law in this area. See Amato v. Bernard, 618 F.2d 559 (9th Cir.1980); Barrowlough, 752 F.2d at 936.[8]
 
 
 26
 We do not suggest that arbitration of purely contractual claims asserted pursuant to ERISA cannot be compelled. Suits to establish or enforce rights to benefits that are independent of claims predicated on substantive violations of ERISA are appropriately resolved through arbitration. See Air Line Pilots Ass'n v. Northwest Airlines, Inc., 627 F.2d 272, 275-76 (D.C.Cir.1980). The parallel between Sec. 1132(a) and Sec. 301 of LMRA suggests Congress intended these contractual pension claims to remain subject to arbitration in the same manner that claims for breach of a collective-bargaining agreement have been held to be. See Barrowclough, 752 F.2d at 939.[9]
 
 
 27
 We conclude, therefore, that a federal judicial forum cannot be cut off to those asserting claims created as part of a comprehensive federal scheme protecting the rights of individual participants or beneficiaries of a pension plan and which fall within the exclusive jurisdiction of the federal courts. Accordingly, we affirm.
 
 CARDAMONE, Circuit Judge, dissenting:
 
 28
 Because I think the majority's affirmance rests on both a mistaken view of the role of arbitration, one which the Supreme Court has recently abandoned, and on an incorrect inference it draws from Congressional purpose, I respectfully dissent.
 
 
 29
 The majority says that it recognizes the "liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). This policy, which provides that a party who agrees to arbitrate is bound to that agreement, absent fraud or duress. See Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). This rule has been codified as the United States Arbitration Act, 9 U.S.C. Sec. 1 et seq. (1982), and creates a presumption permitting arbitration that the majority ignores. The exception to the ability to agree to arbitration is found when Congress creates a right that it wants vindicated in court, and thus prohibits a waiver of that forum. In those cases arbitration is barred. As the party seeking to avoid arbitration, Bird bears the burden of establishing Congress' purpose to exclude ERISA from the Arbitration Act. This purpose must be discernible from the text of ERISA, or its legislative history, or its underlying policies. See MaMahon, 107 S.Ct. at 2337. In my view, Bird has failed to meet this burden.
 
 
 30
 The linchpin of the majority's position is the distinction it draws between contractual rights relating to an ERISA plan--that can be brought in either federal or state court--and statutory rights created by ERISA which, the majority believes, may only be brought in federal court. Hence, it emphasizes the statutory nature of the rights that Bird asserts. The majority correctly notes that if a plaintiff goes to court to enforce a right created by ERISA, rather than by the pension plan, federal jurisdiction is exclusive rather than concurrent. See 29 U.S.C. Sec. 1132(e). It then seems to take a leap in logic to a proposition with which I am unable to agree: Congress' preference for federal courts to state courts in the above instance compels the conclusion that Congress also prefers federal courts over arbitration tribunals, so much so that private parties cannot contract to the contrary.
 
 
 31
 This finding of Congressional design is unsupported by the majority's citations to ERISA's text or its legislative history--neither source even mentions arbitration. Further, it defies the Supreme Court's pronouncement that our "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." McMahon, 107 S.Ct. at 2337 (emphasis added); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 625-27, 105 S.Ct. 3346, 3353-54, 87 L.Ed.2d 444 (1985) (stating that presumption of arbitrability applies to statutory claims); Local 210, Laborers Intern. v. Labor Relations Div. Assoc'd Gen. Contractors of America, 844 F.2d 69, 74 (2d Cir.1988) (dictum).
 
 
 32
 Obviously, this is not to say that all statutory claims must be arbitrable--Congress may require exclusive federal court jurisdiction. See Barrentine v. Arkansas Best Freight Sys., 450 U.S. 728, 742, 745, 101 S.Ct. 1437, 1445, 1447, 67 L.Ed.2d 641 (1981) (holding that Congress envisioned a plaintiff who loses compulsory arbitration may still bring federal court claim arising under the Fair Labor Standards Act, 29 U.S.C. Sec. 201, particularly because unions that represent plaintiffs in arbitration may not always do so vigorously). But it does not follow that from the presence of a federal statutory right, and the existence of a federal judicial forum with "ready access" to it, that plaintiffs are mandated to use that forum exclusively. See McMahon, 107 S.Ct. at 2338 (stating that the exclusive jurisdiction provision of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) (1982), is waivable by compulsory arbitration agreement). There is no suggestion in the statute or the circumstances leading to its enactment that when Congress gave ERISA plaintiffs "ready access" to the federal courts, it was issuing an invitation to plaintiffs that they could not refuse.
 
 
 33
 In an effort to portray "an inherent conflict between arbitration and the statute's underlying purposes," McMahon, 107 S.Ct. at 2337, the majority characterizes ERISA as a "remedial" statute, and then sets forth a number of reasons why Congress enacted ERISA. Concededly, the legislative goal of protecting pension fund participants and beneficiaries is laudable. But that does not answer the question of what means a party may select to vindicate those statutory rights. Cf. Mitsubishi, 473 U.S. at 628, 105 S.Ct. at 3359 (stating that a party who agrees to arbitrate does not forego substantive rights under a statute, but merely alters the means of resolving the dispute). Simply labeling ERISA as "remedial" is insufficient, it seems to me, to rebut the heavy presumption in favor of freedom of contract to arbitrate, particularly as the High Court has sustained the validity of compulsory arbitration agreements under other "remedial" statutes. See McMahon, 107 S.Ct. at 2345 (describing the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1964(c) (1982), as remedial, but nonetheless enforcing compulsory arbitration agreement); Mitsubishi, 473 U.S. at 637, 105 S.Ct. at 3359 (holding that enforcement of compulsory arbitration provision would not prevent the Clayton Act, 15 U.S.C. Sec. 15, from serving its remedial function).
 
 
 34
 In the final analysis, what remains of my colleagues' underlying premise must be that Congress could not have envisioned arbitration of ERISA's remedial statutory rights because arbitrators are not up to the task. Yet, that assumption appears untenable too. See McMahon, 107 S.Ct. at 2340; Mitsubishi, 473 U.S. at 633, 105 S.Ct. at 3357. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-20, 105 S.Ct. 1238, 1241-42, 84 L.Ed.2d 158 (1985); Moses H. Cone Memorial Hosp., 460 U.S. at 24, 103 S.Ct. at 941.
 
 
 35
 Here, Bird signed a contract agreeing to submit his disputes to arbitration. Because there is no hint that Congress planned to deprive him of that option, he should be held to the bargain he made. See McMahon, 107 S.Ct. at 2346; Mitsubishi, 473 U.S. at 640, 105 S.Ct. at 3360. I would adopt the approach of the Eighth Circuit in Sulit v. Dean Witter Reynolds, Inc., 847 F.2d 475 (8th Cir.1988) (enforcing agreement for compulsory arbitration of ERISA claim), in light of our duty to "rigorously enforce agreements to arbitrate." See Dean Witter Reynolds, Inc., 470 U.S. at 221, 105 S.Ct. at 1242.
 
 
 36
 Accordingly, I vote to reverse the order denying appellant's motion to compel arbitration, and to remand to the district court for it to direct that the agreement to arbitrate be enforced.
 
 
 
 [1]
 Now known as Shearson Lehman Hutton, Inc
 
 
 [2]
 The provision reads:
 Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within 5 days after demand by you that I make such election, then you may make such election. Judgement upon any award rendered by the arbritrators [sic] may be entered in any court having jurisdiction thereof. This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws.
 
 
 [3]
 All substantive ERISA claims may be brought only in the federal district court. 29 U.S.C. Sec. 1132(e)(1). Suits to recover benefits due or to enforce rights under the terms of a particular plan may also be brought in state courts. Id
 
 
 [4]
 The issue of the compulsory arbitrability of ERISA claims is before us on Judge Cabranes's certification for appeal pursuant to 28 U.S.C. Sec. 1292(b) and Rule 5(a) of Federal Rules of Appellate Procedure. In reviewing the district court's order, we are not bound by the "clearly erroneous" standard of Rule 52(a) of the Federal Rules of Civil Procedure. A denial of a motion to compel arbitration is subject to de novo review. Genesco, Inc. v. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir.1987)
 
 
 [5]
 The court below also correctly determined that the final sentence of the arbitration provision did not remove appellees' securities claims from the ambit of the agreement to arbitrate. Rather, that statement was merely a disclosure required by the Securities and Exchange Commission. See 17 C.F.R. Sec. 240.15c2-2; Finkle and Ross v. A.G. Becker Paribas, Inc., 622 F.Supp. 1505, 1510 (S.D.N.Y.1985)
 
 
 [6]
 Following these general principles, claims pursuant to statutes not evincing a Congressional intent to preclude arbitration have been held compulsorily arbitrable. See, e.g., McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claims under the Securities Exchange Act of 1934 arbitrable); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (federal antitrust issues arbitrable); Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (lower federal courts may not stay arbitration pending resolution of the non-arbitrable claims by the court)
 
 
 [7]
 The Conference Report reads:
 The U.S. district courts are to have exclusive jurisdiction with respect to actions involving breach of fiduciary responsibility as well as exclusive jurisdiction over other actions to enforce or clarify benefit rights provided under title I. However, with respect to suits to enforce benefit rights under the plan ... which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947. The U.S. district courts are to have jurisdiction of these actions without regard to the amount in controversy and without regard to the citizenship of the parties.
 H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 327, reprinted in 1974 U.S.Code Cong. & Admin. News at 5107.
 
 
 [8]
 Appellants rely on Sulit v. Dean Witter Reynolds, 847 F.2d 475 (8th Cir.1988), for the proposition that arbitration agreements are enforceable in the context of statutory ERISA claims. But, the key issue before the Eighth Circuit in that case was whether 29 U.S.C. Sec. 1110(a) constituted a "no-waiver" provision prohibiting enforcement of agreements relinquishing access to the federal courts provided by the statute. Id. The panel relied on McMahon, supra, which held that a similar provision in the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78cc(a), did not block arbitration of substantive claims under that statute. However, to the extent the Sulit court could "find no hint in the legislative history" of Congress's intent that substantive ERISA claims not be subject to compulsory arbitration, we disagree
 
 
 [9]
 The district court properly determined that the arbitration and the federal litigation should proceed concurrently. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)