Ralph MAJESKI, Joseph Yach, Janice Waisman, Larry R. Peterson, Thomas Weil, Lee Aldridge, Randy Karpinsky, Kenneth Kulas, Robb S. Elliot and Raymond Harding, Plaintiffs,

v.

BALCOR ENTERTAINMENT COMPANY LTD, an Illinois corporation; Shearson Lehman Hutton, Inc., f/k/a Shearson Lehman Brothers, Inc., and f/k/a Shearson Lehman/American Express, Inc., a Delaware corporation; The Balcor Company, an Illinois corporation; Balcor/American Express Inc., an Illinois corporation; Balcor Securities Company, an Illinois corporation, The American Express Company, a New York corporation; New World Pictures, Ltd., a California corporation, and Balcor Film Investors, an Illinois Limited Partnership, Defendants.

Civ. A. No. 88–C–1079.

United States District Court, E.D. Wisconsin.

June 22, 1990.

George P. Kersten, E. Campion Kersten, Bruce J. Landgraf, Kersten & McKinnon, Milwaukee, Wis. (Jerry H. Friedland, Galanis & Friedland, S.C., of counsel), for plaintiffs.

C. Elizabeth McCarty and Mary Ellen Hennessy, Katten Muchin & Zavis, Chicago, Ill., Ross A. Anderson, Frisch, Dudek, Ltd., Milwaukee, Wis., Robert J. Walner, Gen. Counsel, The Balcor Co., Skookie, Ill., for Balcor Entertainment Co., Ltd., The Balcor Co., Balcor/American Exp. Inc., Balcor Securities Co., New World Pictures, Ltd., and Balcor Film Investors.

H. Nicholas Berberian, Thomas M. Knepper, Jerry M. Santangelo, Neal Gerber Eisenberg & Lurie, Chicago, Ill., Terry E. Mitchell, Mitchell, Baxter & Zieger, S.C., Milwaukee, Wis., for Shearson Lehman Hutton, Inc. and American Exp. Co.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### BACKGROUND

On August 23, 1989, the Judicial Panel on Multidistrict Litigation ordered, pursuant to Title 28 U.S.C. § 1407, the case of *Robert Eckstein, et al. v. Balcor Film Investors, et al. ("Eckstein")* to be transferred from the Central District of California to this court for consolidated pretrial proceedings with *Ralph Majeski, et al. v. Balcor Film Investors, et al. ("Majeski")*. The defendants in both cases have filed motions to dismiss on various grounds. This decision only deals with the motion to dismiss in the *Majeski* action. A separate decision and order ruling on defendants' motion to dismiss in the *Eckstein* action (No. 89–C–1315 (E.D.Wis.) will be forthcoming.

### FACTS

On October 11, 1988, plaintiff Ralph Majeski and nine other individuals ("plaintiffs") filed a complaint in the Eastern District of Wisconsin on behalf of themselves and the class they seek to represent. Plaintiffs alleged that the defendants have:

(1) violated § 10–b of the Securities Exchange Act of 1934 ("§ 10(b)") and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission ("Rule 10b–5");

(2) violated § 17(a) of the Securities Act of 1933 ("the 1933 Act");

(3) violated § 12(2) of the 1933 Act;

(4) breached the fiduciary duty they owed to plaintiffs;

(5) committed the Wisconsin common-law torts of fraud, negligent misrepresentation, and strict liability misrepresentation; and

(6) breached the contract they had with plaintiffs. (Complaint ¶¶ 15–40). In addition, plaintiffs brought their claim as a derivative action on behalf of the Balcor Film Investors ("BFI") partnership (Complaint ¶¶ 47–50). Plaintiffs claim compensatory damages in the amount of $117,812,-

817 and seek punitive damages in the amount of $50,000,000.

On January 20, 1989, the defendants moved the court to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6) because they allege that:

1) there is no private right of action under § 17(a) of the 1933 Act;

2) plaintiffs failed to state a claim under § 12(2) of the 1933 Act;

3) plaintiffs failed to plead fraud with particularity as required by Fed.R.Civ.P. 9; in particular, the defendants assert that the complaint fails to:

a) identify the misrepresentations with sufficient particularity; and

b) identify which defendants participated in which misrepresentations.

On March 15, 1989, the defendants also moved this court to strike plaintiffs' request for punitive damages, and on March 24, 1989, defendant Shearson Lehman Hutton, Inc. ("Shearson") moved this court to stay all of plaintiffs' claims against Shearson pending arbitration.

During 1985, the plaintiffs purchased differing quantities of limited partnership interests ("Partnership Interests") in BFI, at a price of $1,000 for each interest (Complaint ¶ 1).

BFI, a limited partnership, was formed in late 1984 specifically to produce and distribute movies pursuant to an agreement with a motion picture company, New World Entertainment, Ltd. ("New World"). The general partner of BFI is Balcor Entertainment Company Ltd. ("BEC"), an Illinois corporation. BEC is the wholly-owned subsidiary of the Balcor Company ("Balcor"). Balcor is the wholly-owned subsidiary of Shearson which in turn is the wholly-owned subsidiary of the American Express Company ("American Express"). The Balcor Securities Company ("Balcor Securities") also is a wholly-owned subsidiary of Balcor and was the underwriter of the offering of the Partnership Interests.

## ANALYSIS

### I. DEFENDANTS' MOTION TO DISMISS

#### A. Standard of Review for Fed.R.Civ.P. 12(b)(6) Motion

The United States Supreme Court has repeatedly held that a federal district court should only grant a motion to dismiss on the pleading if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973), *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). In addition, the Supreme Court has stated that:

The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter of for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

#### B. Private Right of Action Under § 17(a) of the 1933 Securities Act

■ The defendants argue that plaintiffs' claim arising under § 17(a) of the 1933 Act should be dismissed because the Seventh Circuit in *Schlifke v. Seafirst Corp.* held that there is no implied private right of action under § 17(a). 866 F.2d 935 (7th Cir.1989). During oral argument, plaintiffs' counsel agreed with defendants' claim that *Schlifke* is currently controlling in the Seventh Circuit.

In *Schlifke*, the Seventh Circuit held:

We are also disinclined to accept the plaintiffs' suggestion that we imply a private right of action under section 17(a) of the Securities Act of 1933. Although we held in *Daniel v. Teamsters* [561 F.2d 1223, 1244–46 (7th Cir.1977)], that such a

right of action exists, the Supreme Court reversed our judgment and expressly refused to decide the section 17(a) issue. A decisive majority of recent authorities have refused to imply a right of action under section 17(a). We believe this authority should prevail.

(Citations and footnotes omitted). 866 F.2d at 942–43. Thus, this court holds that plaintiffs' claim that defendants violated § 17(a) of the 1933 Act is dismissed.

### C. Failure to State a Claim Under § 12(2) of the 1933 Securities Act

■ The defendants argue that plaintiffs' claim arising under § 12(2) of the 1933 Act should be dismissed because the plaintiffs have not pled facts which indicate that their claim has been timely brought. The plaintiffs argue that defendants' statute of limitations argument is an affirmative defense and should be raised in a motion for summary judgment, not a motion for dismissal.

Section 12(2) of the 1933 Act, Title 15 U.S.C. § 77l, renders a person liable for selling a security by using a material misleading prospectus or other form of communication. The statute of limitations for a § 12(2) claim are located in § 13, 15 U.S.C. § 77m, of the 1933 Act. Title 15 U.S.C. § 77m states:

No action shall be maintained to enforce any liability created under ... section 12(2) [15 U.S.C. § 771(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created under ... section 12(2) more than three years after the sale.

Thus, in order for plaintiffs' § 12(2) claim to be timely at this stage of the case, plaintiffs must plead that they did not discover and, in the exercise of reasonable diligence, could not have discovered the alleged untrue statements or omissions prior to October 11, 1987.[1] In addition, plain-

tiffs also need to plead that their purchases satisfy the three-year limitation provision.

The plaintiffs, however, have not alleged facts in their complaint which indicate that the time limitations on § 12(2) claims, as put forth in § 13, have been fulfilled. Neither paragraph 14 nor 17 of the amended complaint (¶¶ 10 and 13 of original complaint), which the plaintiffs argue satisfy § 13, state that the plaintiffs discovered the violation of § 12(2) after October 11, 1987. In addition, neither paragraph states that the violation was incapable of being discovered using reasonable diligence prior to October 11, 1987.

During oral argument, plaintiffs' counsel also argued that paragraph 18 of plaintiffs' amended complaint pleads facts that allege compliance with § 13. Paragraph 18 in pertinent part states:

As a result of the defendants' concealment and failure to give fair, accurate and timely reports on the Partnership, the plaintiffs and Plaintiff Class did not discover the false statements and omissions within one year prior to the filing of this action and it was impossible for them to be aware of their rights as to the defendants. The plaintiffs and Plaintiff Class have thus not had notice of one year or more of their causes of actions against the defendants.

This court finds this allegation and plaintiffs' accompanying argument somewhat perplexing. The plaintiffs appear to argue that they cannot plead compliance with the one-year limitations period of § 13 because defendants have been concealing material information from them, and therefore, although they know misstatements and omissions have occurred, they do not yet know what the specific misstatements or omissions are.

This response, however, begs the question of when did the plaintiffs learn that the defendants were concealing or misstating material information to and from them. During oral argument, plaintiffs' counsel essentially answered this question when he claimed that plaintiffs first discovered enough facts to justify the commencement

---

1. Plaintiffs filed their complaint on October 11, 1988.

of an action during the summer of 1988, approximately two to three months prior to the filing of their action. This factual allegation, however, is not in the complaint.

The plaintiffs also argue that they do not need to plead compliance with § 13 in their complaint and cite the Seventh Circuit's *Stewart v. R.C.A. Corp.* decision to support their position. 790 F.2d 624 (7th Cir. 1986). Specifically, they rely on the following statement in *Stewart:* "The motion to dismiss was the wrong way for RCA to raise the timeliness of the complaint." *Id.* at 628.

In *Stewart,* however, the plaintiff pled facts which indicated that the complaint was timely filed. *Id.* at 626–27. The defendant disagreed with the plaintiff's facts and, instead of answering the complaint and moving for summary judgment, filed an affidavit and moved the court to dismiss because the complaint was untimely. *Id.* The district court then conducted an evidentiary hearing on the factual dispute regarding the timeliness of plaintiff's complaint, and held in favor of the defendant by ruling that the complaint was not timely filed.

This background is critical because it places the Seventh Circuit's statement in proper context. Essentially, the Seventh Circuit held that once a plaintiff has pled facts to satisfy the statute of limitations requirement, then the proper method for defendant to dispute these factual allegations is a motion for summary judgment. The present case, however, is distinguishable from *Stewart* because the plaintiffs have pled no facts which satisfy the filing limitations of § 13. Thus, *Stewart* is not controlling.

The defendants have cited numerous cases which have held that facts indicating compliance with § 13 must be affirmatively pled in order to validly state a claim of relief under § 12(2). *See e.g., Southwest Investments I v. Midland Energy Co., Inc.,* 596 F.Supp. 219, 222 (E.D.Mo.1984); *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1312 (N.D.Ill.1984); *In re Longhorn Securities Litigation,* 573 F.Supp. 255, 266 (W.D.Okla.1983); *Hangert*

*v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1033 (D.C.Minn.1981). This authority is persuasive. Thus, plaintiffs' § 12(2) claim is dismissed.

**D. Pleading With Particularity as Required by Fed.R.Civ.P. 9(b)**

██ The defendants argue that the allegation of fraud in the complaint is not pled with the particularity required by Fed.R. Civ.P. 9(b). Specifically, defendants claim that the complaint should be dismissed because it does not state: 1) the specific misstatements defendants made, 2) how these statements are false, 3) that defendants had knowledge of the statements' falsity, and 4) which specific defendant is responsible for each misstatement or omission.

*1. Identifying The Misstatements With Particularity*

In the amended complaint, plaintiffs set forth with sufficient particularity the misstatements which defendants allegedly made. In paragraph 12, plaintiffs identify specific documents, such as the BFI Prospectus, Balcor bulletin PR85–061–100M, and Shearson and American Express document LP5013, which they allege contain misstatements: "the defendants' prospectus and other communications to salesmen and to investors at the time their investments were made were false and misleading." (Complaint ¶ 14).

The defendants, however, argue that plaintiffs must explain how these statements are false. The complaint, however, does explain how the statements are false because it repeatedly alleges that defendants stated that purchasing BFI Partnership Interests was a low-risk Investment (See e.g., Complaint ¶¶ 12, 13) and that these statements were false (Complaint ¶ 14). Thus, defendants' argument is without merit.

The defendants also argue that the complaint must allege that the defendants knew at the time of the statements that they were misleading or untrue. First, the complaint does this in paragraph 5 by alleging that:

Each of the defendants knew that the activity of each of the other defendants was in violation of the Securities Act of 1933 and the Securities Exchange Act of 1934 and each of the defendants gave substantial assistance in effecting the violations of those acts.

Second, although knowledge in a Rule 10b–5 claim, also referred to as scienter,[2] is an essential element of a successful cause of action,[3] the Seventh Circuit has explicitly held that Rule 10b–5 claimants need not plead scienter. *Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975); *Accord, Blake v. Dierdorff*, 856 F.2d 1365, 1370 (9th Cir. 1988).

### 2. *Identifying Which Defendants Participated in Which Misrepresentations*

The defendants argue that the complaint should be dismissed because it does not indicate the particular misstatement(s) that each defendant has allegedly made. Neither party has cited a Seventh Circuit decision which sets forth the degree to which specific misrepresentations must be attributed to individual defendants. Defendants rely primarily on *In re Worlds of Wonder Securities Litigation* to support their claim that the fraudulent acts of each defendant must be alleged specifically. 694 F.Supp. 1427, 1433 (N.D.Cal.1988). The complaint in *Worlds of Wonder*, however, is distinguishable from the complaint in this case.

In *Worlds of Wonder*, the court indicated that the complaint provided no details on how or why defendants were responsible for issuing the statement in question. *Id.* at 1433. Plaintiffs' complaint, however, alleges that each defendant was a controlling person as to each of the other defendants, and that each defendant was responsible for the publication of the misstatements (Complaint ¶¶ 3, 5). In addition, the complaint provides specific details to support these allegations (Complaint ¶ 3(a)-(g)) and,

where possible, attributes specific statements to specific defendants (Complaint ¶ 12).

The court of appeals in the Ninth Circuit, which is the circuit in *Worlds of Wonder*, has held that:

> In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group published information," it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

*Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987) (citations omitted). This reasoning applies with equal force to the collective action of corporations. Thus, plaintiffs' complaint satisfies the particularity requirement of Rule 9(b).

## II. SHEARSON'S MOTION TO STAY PROCEEDINGS PENDING ARBITRATION

On March 24, 1989, Shearson moved the court to stay the proceedings against it pending arbitration. Shearson argued that each of the named plaintiffs, with the possible exception of Majeski, in connection with maintaining their brokerage accounts at Shearson, had signed a Shearson Client or Customer Agreement ("Shearson Agreement") which provided that any disputes arising out of or relating to the accounts would be settled via arbitration. The plaintiffs have refused to arbitrate their claims against Shearson and argue that the arbitration clause of the agreement is not controlling because:

1) Shearson has waived its right to arbitrate;

---

**2.** Black's Law Dictionary defines scienter as: Knowingly. The term is used in pleading to signify an allegation (or that part of the declaration or indictment which contains it) setting out the defendant's previous knowledge of the cause which led to the injury complained of, or rather his previous knowledge of a state of

facts which it was his duty to guard against, and his omission to do which has led to the injury complained of.

**3.** *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1975).

2) Shearson's motion must be stricken because it was misleading and filed in bad faith;

3) none of the arbitration clauses in question require arbitration in this type of case; and

4) the case and controversy is not subject to arbitration because the agreements were the product of fraud.

## A. Shearson's Waiver Of Its Right To Arbitrate

■ This court finds that Shearson has not waived its right to arbitrate. In *Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* the Seventh Circuit recognized that the party seeking to prove waiver has a heavy burden. 712 F.2d 270 (7th Cir.1983). Plaintiffs argue that Shearson waived its right to arbitrate because it didn't seek arbitration "at the outset" of plaintiffs' case. This allegation is incorrect. The first item that Shearson filed with the court stated:

> Moreover, to the extent any retail customer of Shearson believes that he or she has a claim against Shearson, that claim must be brought pursuant to the terms of their arbitration agreement with Shearson.

(Shearson Supp. Mem. filed Jan. 20, 1989 at 3 n. 1). Thus, plaintiffs have not met their heavy burden of showing how Shearson has waived its right to arbitrate.

## B. Striking Shearson's Motion Because it Was Misleading and Filed in Bad Faith

■ Plaintiffs argue that Shearson's motion is misleading and made in bad faith because Shearson did not inform this court that the language of the arbitration clauses contained in the individual agreements the plaintiffs signed is not identical. Counsel for Shearson has stated that he did not note the variation in the language until after plaintiffs' counsel brought it to his attention (Shearson Reply Mem. filed Apr. 25, 1989 at 11 n. 6). There is no indication that Shearson's oversight was done in bad faith or that it has prejudiced the plaintiffs. Thus, Shearson's motion to stay pending arbitration was not filed in bad faith and it is not stricken.

## C. The Arbitration Clauses do not Require Arbitration

### 1. *Shearson as an Underwriter*

■ Plaintiffs argue that the arbitration clause does not apply to their claim against Shearson because they are suing Shearson as an "underwriter" of the public offering of the BFI Partnership Interests. Plaintiffs claim that the Shearson Agreements they signed only cover claims they have against Shearson as broker, not as an underwriter. Paragraph thirteen of the Shearson Agreements contains the arbitration clause and states:

> Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you, your officers, directors, agents and/or employees for me or to this agreement or the breach thereof, shall be settled by arbitration....

(Salmon Aff. Exh. 1). This provision, however, does not definitively state whether or not the agreement applies to client disputes regarding Shearson's role as an underwriter.

The United States Supreme Court has repeatedly held:

> that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Mitsubishi Motors v. Soler Chrysler-Plymouth,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1984), *quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The Seventh Circuit decision which plaintiffs cite to support their argument that the current dispute is beyond the scope of the arbitration clause, *Washburn v. Societe*

*Commerciale de Reassurance,* also recognizes that any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. 831 F.2d 149, 150–51 (7th Cir.1987).

Plaintiffs' argument concerning the scope of the arbitration clause does raise some question as to whether or not the clause covers a suit against Shearson as an underwriter.[4] As noted above, however, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors,* 473 U.S. at 626, 105 S.Ct. at 3353; *Moses,* 460 U.S. at 24–25, 103 S.Ct. at 941. Thus, this court finds that the arbitration clause covers a controversy involving Shearson as an underwriter because the arbitration clause states "any controversy arising out of or relating to ... transactions with you...." (Salmon Aff. Exh. 1).

2. *Limitation on Arbitration Clause*

The plaintiffs also argue that the Shearson Argreements do not require arbitration because they contain language which exempts federal securities claims from arbitration. The language plaintiffs refer to is a disclosure provision which at the time was mandated by the Securities and Exchange Commission ("SEC") Rule 15(c)2–2. *See Gugliotta v. Evans & Co., Inc.,* 690 F.Supp. 144, 145 (E.D.N.Y.1988); *Jeske v. Brooks,* 875 F.2d 71, 74–75 (4th Cir.1989). The SEC required this disclosure provision because it believed that a pre-dispute agreement between a customer and broker to arbitrate claims arising under the Securities Act of 1933 or the Securities Act of 1934 were void and unenforceable. *Van Ness Townhouses v. Mar Industries Corp.,* 862 F.2d 754, 757 (9th Cir.1988), *quoting* Exchange Act Release No. 25034; *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 234 n. 3, 107 S.Ct. 2332, 2341 n. 3, 96 L.Ed.2d 185 (1987); *Gugliotta,* 690

F.Supp. at 145. The SEC, however, rescinded Rule 15(c)2–2 after the Supreme Court in *McMahon* held that federal security claims arising under the Act of 1934 are arbitrable. *Gugliotta,* 690 F.Supp. at 146; 482 U.S. at 238, 107 S.Ct. at 2343. In addition, in *Rodriguez de Quijas v. Shearson/American Express, Inc.,* the Court held that claims arising under the Act of 1933 are arbitrable. —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

There are two versions of the SEC disclosure provision contained in the Shearson Agreements. Plaintiffs Raymond Harding ("Harding"), Larry R. Peterson ("Peterson"), and Joseph Yack ("Yack") signed agreements containing the following provision which this court will refer to as Version A:

This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an express or implied right of action under certain of the federal securities laws.

(Salmon Aff. Exhs. 1, 3, 4,); and plaintiffs Lee Aldridge ("Aldridge"), Kenneth Kulas ("Kulas"), Randy Karpinsky ("Karpinsky"), Robb S. Elliot ("Elliot"), and Thomas Weil ("Weil"),[5] signed agreements containing the following provision which this court will refer to as Version B:

This agreement to arbitrate does not apply to future disputes arising under certain of the federal securities laws to the extent it has been determined as a matter of law that I cannot be compelled to arbitrate such claims.

(Salmon Aff. Exhs. 2, 5, 6, 7, 8). Neither version of this provision appears in the agreement signed by plaintiff Janice Waisman ("Waisman"), and therefore all of her claims against Shearson are stayed pending arbitration (Salmon Aff. Exh. 9). In addition, defendnats have not submitted to this

---

4. This court notes that Shearson denies that it was an underwriter in the public offering of the BFI partnership interests, and that this is a dispute that will be resolved either during a motion for summary judgment or the trial.

5. During oral argument, defendants' counsel submitted copies of each of the plaintiffs' Shear-

son Agreements. Counsel noted, however, that although plaintiff Weil had signed two separate agreements with one containing Version A and one containing Version B of the disclosure statement, only the agreement containing Version B had been submitted to this court.

court an agreement for Ralph Majeski ("Majeski"), and therefore all of his claims against Shearson will be tried before this court.

■ Version A of the disclosure provision does not state which federal security law claims were meant to be non-arbitrable. The Seventh Circuit has not yet ruled on whether or not this type of disclosure provision exempts federal security law claims from arbitration, and the circuits which have addressed this question are split as to how this ambiguity should be resolved.

The Ninth Circuit has held that this exact provision must be interpreted to exempt causes of action arising under the 1933 and 1934 Acts from arbitration. *Van Ness Townhouses*, 862 F.2d at 757. The Ninth Circuit reasoned that the disclosure provision was referring to and applied to these claims because the purpose of Rule 15(c)2–2, which required this provision, was "to prohibit pre-dispute agreements to arbitrate securities claims under both the 1933 and 1934 Acts." *Id.*

The Second Circuit, on the other hand, also has considered the meaning of this exact language and has held that this provision does not exempt causes of action arising under the 1933 and 1934 Acts from arbitration. *Bird v. Shearson Lehman/American Express, Inc.*, 871 F.2d 292, 295 n. 5 (2nd Cir.1989). The Second Circuit reasoned that the reference to certain federal securities claims being non-arbitrable was not controlling because it "was merely a disclosure required by the Securities and Exchange Commission." *Id.* Essentially, the Second Circuit eliminated this provision from the Shearson Agreement because it had been required by the SEC under the incorrect belief that causes of action arising under the 1933 and 1934 Acts were non-arbitrable.

Both the Ninth and Second Circuit decisions are persuasive. On the one hand, although the provision is vague, the history of Rule 15(c)2–2 makes it clear that the rule's purpose was to require customer agreements to include language exempting 1933 and 1934 Act causes of action from arbitration. *Van Ness Townhouses*, 862 F.2d at 757. On the other hand, this provision is vague and Shearson only included it because of the SEC Rule 15(c)2–2 requirement which was based on the faulty assumption that causes of action under the 1933 and 1934 Act were non-arbitrable.

In addition, because of the particular facts of this case judicial efficiency does not favor either the Ninth or Second Circuit decisions. This court must hear and decide the securities law claims against defendant Shearson because no Shearson Agreement has been submitted for plaintiff Majeski. This court also must stay and send to arbitration plaintiff Waisman's claims against Shearson because there is no provision in her Shearson Agreement which save her claims from arbitration.

This court, however, notes that the Supreme Court has consistently upheld the strong federal trend favoring arbitration. *See Rodriguez de Quijas*, —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185; *Mitsubishi Motors*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444; *Moses H. Cone Memorial Hospital*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765. Thus, as there is doubt as to the scope of coverage of the disclosure provision, this court adopts the Second Circuit holding in *Bird*, and holds that plaintiffs' Harding, Peterson, and Yack's claims against Shearson are stayed pending arbitration.

■ Version B of the disclosure provision limits the arbitration exemption only to those security law causes of action that are determined as a matter of law to be non-arbitrable. As discussed above, the Supreme Court has held that claims arising under both the 1933 and 1934 Acts are arbitrable. *McMahon*, 482 U.S. at 238, 107 S.Ct. at 2343; *Rodriguez*, 109 S.Ct. at 1915. Thus, Version B of the provision does not exempt plaintiffs Aldridge, Kulas, Karpinsky, Elliot, and Weil's claims from arbitration, and their claims against Shearson are stayed accordingly.

**D. The Arbitration Agreements Were the Product of Fraud**

■ The plaintiffs final argument against Shearson's motion to stay pending

arbitration is that the agreements containing the arbitration clauses were a product of fraud. The Supreme Court, however, has held that charges of fraud in the inducement of a contract that contains an arbitration agreement is itself an issue for arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967). Thus, plaintiffs' argument is not persuasive.

### III. DEFENDANTS' MOTION TO STRIKE PUNITIVE DAMAGES

On March 15, 1989, the defendants moved this court for an order striking plaintiffs' request for punitive damages. On March 30, 1989, plaintiffs responded to defendants' motion by stating that they did not wish to dispute defendants' claim that punitive damages are not recoverable under § 10(b) of the 1934 Act. Plaintiffs, however, argued that punitive damages are permissible for their pendent Wisconsin common-law tort claims. During oral argument, plaintiffs' counsel reiterated plaintiffs' position regarding punitive damages for their § 10(b) claim and also stated that plaintiffs were confident that they were not entitled to punitive damages in connection with their § 12(2) claim. Thus, plaintiffs' request for punitive damages for violation of § 10(b) of the 1934 Act and for violation of § 12(2) of the 1933 Act is stricken. This striking, however, will not affect plaintiffs' request for punitive damages in connection with their pendent state law claims.

IT IS THEREFORE ORDERED that defendants' motion to dismiss plaintiffs' claim arising under § 17(a) of the 1933 Act is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiffs' claim arising under § 12(2) of the 1933 Act is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiff's claim arising under § 10(b) of the 1934 Act is denied.

IT IS FURTHER ORDERED that defendant Shearson Lehman Hutton, Inc.'s motion to stay plaintiffs' claims against it pending arbitration is denied in part and granted in part. The motion is denied for plaintiff Ralph Majeski and granted for each of the other named plaintiffs.

IT IS FURTHER ORDERED that the granting in part of Shearson Lehman Hutton Inc.'s motion to stay pending arbitration does not stay any of the plaintiffs' claims against the other named defendants.

IT IS FURTHER ORDERED that defendants' motion to strike the plaintiffs' request for punitive damages is granted for the claims arising under § 10(b) of the 1934 Act and § 12(2) of the 1933 Act, and denied for the pendent state law tort claims.