■ HERBERT H. WALDMAN, Respondent, v NEW PHONE DIMENSIONS, INC., et al., Appellants, et al., Defendants. — Order, Supreme Court, New York County (George Bundy Smith, J.), entered June 13, 1984, denying defendants' motion and plaintiff's cross motion, both for summary judgment, modified, on the law, to grant defendants' motion for summary judgment dismissing the first, second, third, fifth and sixth causes of action of plaintiff's complaint, and is otherwise affirmed, with costs.

Plaintiff Waldman, an inventor of telephone-related devices, constructed and patented a device which, when connected to a telephone, prevents the placement of unauthorized long-distance calls. To promote the device, Waldman entered into a business arrangement with defendant Basile and New Phone Dimensions (NPD) of which Basile is sole officer, director and stockholder. On October 30,.1978, Waldman and NPD executed

a "Patent Purchase Agreement" whereby all right, title and interest in Waldman's device was assigned to NPD, which undertook to market it through the tax-advantaged sale of exclusive, territorial licenses to persons in high tax brackets. As consideration Waldman was to receive $25,000 on November 1, 1978, $25,000 on November 15, 1978 and 9¼% of the "Cash Portion" above $540,540 generated by the sale of the exclusive licenses. The patent purchase agreement also provided that if Waldman had not received the aggregate sum of $100,000 from NPD by December 31, 1978, NPD would reassign the patent to him. In this event, all exclusive license agreements sold by NPD were to remain in full force and effect and Waldman was obliged to accept an unconditional assignment of these contracts. Although he received the two payments of $25,000 each, by December 31, 1978 Waldman had not received $100,000. The patent and the exclusive licensing agreements were reassigned to Waldman on September 18, 1979 and May 27, 1980, respectively. Subsequent to December 31, 1978, Waldman received payments which, together with the $50,000 received in November 1978, totaled $143,000, representing 9¼% of the cash portion received by NPD through its marketing efforts.

Plaintiff argues that subsequent to December 31, 1981 he was entitled to collect the entire amount of the cash portion due and outstanding from the licensees and that NPD, by virtue of its failure to pay $100,000 by that date, was not entitled to retain 90¾% of the cash portion subsequently collected. Plaintiff's position in this regard is without foundation and is contravened by the clear and unequivocal language of the patent purchasing agreement. As plaintiff himself admits, the agreement gave NPD the option of continuing its relationship with Waldman by making a further $50,000 payment. NPD, in the exercise of its business judgment, chose not to exercise this option but this failure did not, as plaintiff contends, automatically abrogate the contractual relationship between the parties as of December 31, 1978. The provision of the agreement dealing with reassignment states that "[NPD] shall reassign the Patent to [Waldman]" in the event that Waldman had not received $100,000 by December 31, 1978. The nonreceipt of the funds was merely the condition precedent to NPD's obligation to reassign, the performance of which was not limited as to time by the agreement. The contractual relationship between the parties continued after December 31, 1978 and Waldman was not, contrary to his present assertion, entitled to 100% of the "Cash Portion" collected after that date, but only the 9¼% as contemplated in paragraph 4 of the patent purchase agreement until such time as the reassignment took place. Furthermore, the reassignment provision of the

patent purchase agreement contemplates the return of the patent and the exclusive license agreements to the plaintiff, not the "Cash Portion" collected by NPD, including distributorship fees and promissory notes referred to in paragraph 4, dealing with the consideration flowing from NPD to Waldman. Where general and special provisions appear, special provisions control. (*Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42.) Accordingly paragraph 4 of the patent purchase agreement controls the allocation of the cash receipts and promissory notes. Waldman was therefore entitled solely to 9¼% of the "Cash Portion" above $540,540 received by NPD as payment for the exclusive license agreements, all of which were sold prior to January 1, 1980. Waldman's claim that he is entitled to 100% of the "Cash Portion" for exclusive license agreements entered into while NPD had full right, title and interest in the patent is contradicted by the plain intention of the parties, expressed in the patent purchase agreement, that NPD for its efforts in marketing the device was to retain 90¾% of the sale proceeds.

The five causes of action of plaintiff's complaint which are the subject of this appeal should be dismissed. It is undisputed that Waldman has received $143,000, representing 9¼% of the "Cash Portion" received by NPD. Since this was all he was entitled to receive pursuant to the patent purchase agreement, the first cause of action sounding in breach of contract must fail. The second and third causes of action for fraud and conversion must likewise be dismissed inasmuch as they allege that the defendants delayed reassigning the patent and exclusive license agreements and made misrepresentations so as to prevent Waldman from demanding their reassignment. Even if the reassignment had taken place on January 1, 1979, Waldman would not have been entitled to any more than the 9¼% of the "Cash Proceeds" which he had already received. Since no injury resulted from the alleged conversion or the fraudulent misrepresentations, no cause of action has been stated. (*Latzko v Spector*, 28 AD2d 1111, *affd* 22 NY2d 710.) Likewise, plaintiff has failed to show any grounds for the injunctive relief sought in the fifth and sixth causes of action. Plaintiff has not been damaged, much less threatened, with irreparable injury by NPD's actions nor is he entitled to any portion of the NPD funds which he seeks to restrain. Concur — Murphy, P. J., Sandler, Carro, Fein and Milonas, JJ.