**Joe GOLDBERG, Plaintiff–Appellee,**

v.

**BEAR, STEARNS & CO., INC., and Michael S. Gorinsky,
Defendants–Appellants.**

No. 89–8573.

United States Court of Appeals,
Eleventh Circuit.

Sept. 26, 1990.

Paul W. Stivers and Theodore J. Sawicki, Rogers & Hardin, Atlanta, Ga., for defendants-appellants.

Jay M. Sawilowsky, Augusta, Ga., for plaintiff-appellee.

Before ANDERSON, Circuit Judge, MORGAN and RONEY *, Senior Circuit Judges.

PER CURIAM:

Defendants Bear Stearns & Co. and Michael S. Gorinsky appeal the district court's denial of their motion to compel arbitration of the plaintiff's federal securities claims. We affirm on the ground that the contract between the parties preserves the customer's right to pursue such claims in federal court.

This case turns on the interpretation of the arbitration provision in the Customer Agreement which the plaintiff, Joe Goldberg, signed in December 1985, when he opened an investment account with Bear Stearns. The form agreement set out the method by which the parties would settle disputes. In pertinent part, it read:

> Any controversy arising out of or relating to your account in connection with transactions between us or pursuant to this Agreement or the breach thereof shall be settled by arbitration.... You understand that this Agreement to arbitrate does not constitute a waiver of your right to a judicial forum where such waiver would be void under the securities laws and specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction.

In August of 1988, Goldberg brought an action against Bear Stearns alleging violations of the Securities Exchange Act of 1934 and various state claims. Only the proper forum for the federal securities claims is at issue here, Goldberg having agreed that his state claims should be submitted to arbitration. The question is whether the last sentence of the Customer Agreement quoted above removed all federal claims from the ambit of the otherwise binding arbitration agreement, whether or not an agreement to arbitrate federal claims would be valid.

The United States Magistrate to whom the case was assigned determined that the agreement between Bear Stearns and Goldberg provided that all controversies between the parties, state and federal, should be arbitrated. He concluded that unless the agreement to arbitrate federal claims was invalid, the agreement required arbitration. The district court, however, rejected the recommendation of the magistrate and held that the final sentence of the agreement specifically excluded all federal claims from the reach of the compulsory arbitration clause. The district court predicated its decision on the explicit language in the Customer Agreement:

> "this Agreement to arbitrate ... *specifically does not* prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction." (emphasis added). A federal court only may compel arbitration of an issue if the terms of a private agreement require the parties to arbitrate that issue. See Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ., [489 U.S. 468,] 109 S.Ct. 1248, 1254 [103 L.Ed.2d 488] (1989). Although the magistrate's analysis of the arbitrability of securities law issues is unassailable, plaintiff nevertheless is not required to arbitrate his securities law claims because the arbitration clause in the parties' December 7, 1985, agreement specifically permits plaintiff to select a judicial forum for his securities law claims.

The court denied the defendants' motion to compel arbitration as to the plaintiff's federal securities claims.

■ Agreements to arbitrate are essentially creatures of contract. Although there is a presumption in favor of arbitration, *see Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983), the parties will not be required to arbitrate when they have not agreed to do so. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University*, 489 U.S. 468, ——, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488, 499 (1989). The courts are not to twist the

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties. The Federal Arbitration Act (FAA) "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Id.* 489 U.S. at ——, 109 S.Ct. at 1255, 103 L.Ed.2d at 500.

In this case, the district court correctly discerned that the arbitration agreement unmistakably states that federal securities claims are not included within the scope of the agreement. All state claims based on either state securities law or the contract itself, and all other federal claims not relating to the securities laws are subject to arbitration, but the agreement specifically did not prohibit the customer from pursuing any claim or claims arising under the federal securities laws in court.

■ The defendants argue that the last sentence in the agreement is a notice provision only and confers no substantive rights to the plaintiff. They point out that the agreement was signed during a period when existing Supreme Court authority held that pre-dispute agreements to arbitrate federal securities claims were invalid. *See Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 188, 98 L.Ed. 168 (1953). Since that time, however, the Supreme Court has reversed its position and held that such agreements are not waivers of a substantive right granted under the securities laws and thus are not void. *See Shear-*

*son/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and *Rodriguez de Quijas v. Shearson/American Express Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Defendants contend that the last sentence in the agreement was inserted solely to comply with a pre-*McMahon* Securities and Exchange Commission regulation which required brokers to notify clients that the arbitration agreements they were signing would not waive their right to bring federal securities claims in court. *See* 17 C.F.R. § 240.15c2–2. Regardless of the reason for the inclusion of the language, however, the parties are bound by what they agreed to do, not by what they would have agreed to do if the law had been different at the time.[1]

The defendants suggest that the phrase used at the beginning of the last sentence, "You understand that ...," clearly indicates that the provision which follows serves a "notice function" only and provides no substantive right. Assuming that the last sentence is a "notice" provision, one might appropriately ask, notice of what? The only plausible answer is that the language notified customers that despite the seemingly absolute language used earlier in the agreement, they were not required to arbitrate their federal securities claims. The customer needs no substantive right in the contract to litigate in court. He has that right, unless he has contracted it away. The last sentence of

---

1. The majority of circuit court opinion is in accord. *See Ballay v. Legg Mason Wood Walker, Inc.,* 878 F.2d 729, 734 (3rd Cir.1989) ("A customer reading the exclusionary language could not be expected to be aware of the regulatory background or to understand that the language may become meaningless with the winds of change in the law."); *Gooding v. Shearson Lehman Brothers Inc.,* 878 F.2d 281, 284 (9th Cir. 1989) ("The undisclosed intentions of the parties are ... immaterial.... The outward manifestation or expression of assent is controlling.") (citations omitted); *Coffey v. Dean Witter Reynolds, Inc.,* 891 F.2d 261, 264 (10th Cir.1989) ("We are more persuaded by the reasoning of those courts which have treated the effect of Rule 15c2–2's requirements, and of the rule's rescission, from a private contractual rather than a public regulatory perspective."); *see also Ka-*

*dow v. A.G. Edwards & Sons, Inc.,* 721 F.Supp. 201, 206 (W.D.Ark.1989) ("no matter the reason for the sentence's inclusion, the parties are now bound by it"); *Amodio v. Blinder, Robinson & Co.,* 715 F.Supp. 32, 36 (D.Conn.1989) ("[t]hough defendant may have included the exclusion in response to the regulation ... it cannot unilaterally impose its rationale for the content of the agreement"); *Leonard v. Stuart–James Co.,* 742 F.Supp. 653 (N.D.Ga.1990) ("[C]ases that look to the regulatory history are not persuasive, as they ignore the specific language of the contract at issue, which is the first step in determining if arbitration should be compelled"). *But see Bird v. Shearson Lehman/American Express Inc.,* 871 F.2d 292, 295 n. 5 (2d Cir.), *cert. granted and judgment vacated,* —— U.S. ——, 110 S.Ct. 225, 107 L.Ed.2d 177 (1989).

the agreement, therefore, informs the customer that he has not forfeited that right by signing this agreement. Although the law may have changed since the agreement was signed, the understanding of the parties has not.

Several courts have refused to compel arbitration, despite the presence of similar "notice" language, when the contract provisions which follow clearly state that federal securities claims are not included in the requirement to arbitrate. *See Giles v. Blunt, Ellis & Loewi, Inc.*, 845 F.2d 131, 132 (7th Cir.1988) (*"I understand ... this agreement ... does not bar me from pursuing such claims based solely on alleged violations of the federal securities laws...."*) (emphasis added); *Ballay*, 878 F.2d at 731 n. 1 (*"I am aware that* this arbitration provision is not binding on me in any dispute ... under the federal securities laws"*) (emphasis added).

■ The defendants contend that a reading which excludes federal claims from the scope of the arbitration agreement would render meaningless the first sentence of the agreement which states that "Any controversy arising out of ... your account ... *shall* be settled by arbitration...." Yet it is not at all uncommon for contracts to begin with broad sweeping language which is later qualified or narrowed. When general propositions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control. *See, e.g., John Hancock Mutual Life Insurance Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 669–70 n. 8 (2d Cir.1983); *Waldman v. New Phone Dimensions, Inc.*, 109 A.D.2d 702, 487 N.Y.S.2d 29, 31 (1985).

■ In essence, the defendants would have us append a clarifying phrase to the end of the last sentence, so that it would read, "... and specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction *where such prohibition would be void and unenforceable under the securities laws.*" The defendants presumably could have written the contract in that way so that plaintiff's

federal claims would now be arbitrable under the Supreme Court's current interpretation of the securities laws. Given the presumption in favor of arbitration, there is a strong temptation to rewrite the contract to achieve that result. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1982). Indeed, in interpreting this precise language, several courts have succumbed to this temptation. *See Caleel v. Curry*, No. 87–C–8155 (N.D.Ill. May 2, 1990) (1990 W.L. 71033); *Scher v. Bear Stearns & Co.*, 723 F.Supp. 211 (S.D.N.Y.1989); *Karol v. Bear Stearns & Co.*, 708 F.Supp. 199 (N.D.Ill. 1989); *Reed v. Bear Stearns & Co.*, 698 F.Supp. 835 (D.Kan.1988); *Ryan v. Liss, Tenner & Goldberg Securities Corp.*, 683 F.Supp. 480 (D.N.J.1988); *Wolverine Carbide Die Co. Employees Profit Sharing Trust v. Bear Stearns & Co.*, No. 88–70384 (E.D.Mich. May 5, 1988). As we have stated, however, the presumption does not require the parties to arbitrate when they have not agreed to do so. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University*, 489 U.S. 468, ——, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488, 499 (1989).

We recognize that of the nine district courts to interpret this precise language, the six listed above have compelled arbitration, while only three, including the court below, have found that the clause precludes arbitration of federal claims. *Kelly v. Robert Ainbinder & Co.*, No. 87–Civ–6348 (S.D.N.Y. March 8, 1990) (1990 W.L. 26809); *Goldberg v. Bear, Stearns & Co.*, No. CV188–169 (S.D.Ga. June 21, 1989); *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961 (S.D.N.Y.1987), *aff'd*, 847 F.2d 834 (2d Cir.1988). We are satisfied that our interpretation accords with the agreement's plain language and the intent of the parties at the time the contract was executed. The language did more than inform customers of the existing state of the law, it incorporated the existing law into the arbitration agreement. If the defendants had wished to provide for a change in the federal law, they certainly

could have drafted a provision which allowed the contract to change as the law changed. Having failed to do that, defendants must abide by the agreement they signed.

Although this may result in the piecemeal resolution of the state and federal issues involved in this case, concerns for judicial economy alone are not sufficient to justify interference with the binding agreement of the parties. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (parties who agree to arbitrate are not prevented from excluding specified claims from the scope of the agreement). Individuals are free to subject different claims to different forums for resolution. Accordingly the district court's order denying the defendants' motion to compel is

AFFIRMED.

MORGAN, Senior Circuit Judge, dissenting:

I respectfully disagree with the majority's conclusion that the customer agreement at issue in this case permits appellee to forego arbitration of his federal securities law claims. As the majority notes, there is a split in authority among the district courts that have considered the language involved in paragraph 13 of the customer agreement at bar. I find those cases which hold that this agreement provides for arbitration of all claims, whether state or federal, to be better reasoned. *See e.g., Scher v. Bear Stearns & Co., Inc.*, 723 F.Supp. 211 (S.D.N.Y.1989); *Reed v. Bear Stearns & Co., Inc.*, 698 F.Supp. 835 (D.Kan.1988); *Ryan v. Liss, Tenner & Goldberg Securities Corp.*, 683 F.Supp. 480 (D.N.J.1988).

The paragraph at issue is set forth in the majority opinion, *supra*, at page 1419. The central question to be resolved concerns the scope of the clause "[y]ou understand that this Agreement to arbitrate does not constitute a waiver of your right to a judicial forum where such a waiver would be void under the securities laws and specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction." That question reduces itself to whether the quoted language is part of a mere notice provision, or whether it gives a substantive contractual right to litigate federal securities claims regardless of the arbitrability of other related claims.

A court asked to compel arbitration must first determine whether the parties to the contract agreed to arbitrate their dispute. Federal policy is not absent from this determination. "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). Any ambiguities in the arbitration agreement should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983).

When choosing between possible interpretations of an ambiguous term, the entire contract should be considered and the interpretation selected which best accords with the remainder of the contract and which, if possible, will make every part of the contract effective. *Broad v. Rockwell International Corp.*, 642 F.2d 929, 947 (5th Cir.1981) (en banc). Construing the arbitration clause as a whole, I agree with those courts that have found that the last sentence beginning with the language "[y]ou understand ..." is a mere notice provision and not a substantive right to litigate federal securities claims in court. *See e.g., Scher*, 723 F.Supp. at 216.

If, as the majority suggests, the proper interpretation of the last sentence of the arbitration clause is that arbitration of appellee's federal securities law claims is optional, the first part of the clause, which provides for the arbitration of all claims, would be meaningless. *Accord, Scher*, 723 F.Supp. at 216; *Reed*, 698 F.Supp. at 841; *Ryan*, 683 F.Supp. at 483. Because I conclude that the parties to the contract did not intend to give appellee a substantive

right to avoid the arbitration of his federal securities law claims, I would reverse the judgement of the district court.