PUBLISH

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 96-2341
_____

D.C. Docket No. 95-922-CIV-ORL-18

ELLEN SUE PALADINO,

Plaintiff-Appellee,

versus

AVNET COMPUTER TECHNOLOGIES, INC.,
a Delaware corporation doing business in the
State of Florida,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 4, 1998)**

Before HATCHETT, Chief Judge, TJOFLAT and COX, Circuit Judges.

HATCHETT, Chief Judge:

Avnet, Inc., appeals a district court ruling refusing to compel arbitration in a former employee's lawsuit alleging violations of Title VII and Florida law. We affirm.

**FACTS**

From September 23, 1992, until January 13, 1994, Ellen Sue Paladino worked for Avnet, Inc. (Avnet), as a Regional Technical Sales Consultant for the Southeastern United States. Prior to beginning work, Paladino signed a handbook acknowledgment containing a "consent to arbitration" agreement. The arbitration agreement (which was in smaller type than the handbook's text) provided as follows:

**IMPORTANT NOTICE: READ THIS CAREFULLY**

. . . .

**CONSENT TO ARBITRATION**

I recognize that during the course of my employment differences can arise between the Company and me. To that end, the Company and I consent to the settlement by arbitration of any controversy or claim arising out of or relating to my employment or the termination of my employment. Arbitration shall be in accordance with the commercial rules of the American Arbitration Association before a panel of three arbitrators in or near the city where I am principally employed. The Company and I further consent to the jurisdiction of the highest court of original jurisdiction of the state where I am principally employed, and of the United States District Court in the District where the arbitration takes place, for all purposes in connection with the arbitration, including the entry of judgment on any award. The arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages.

(Emphasis added.)

2

On January 13, 1994, Avnet fired Paladino.  Paladino subsequently obtained a right to sue letter from the Equal Employment Opportunity Commission and, on September 8, 1995, filed this lawsuit against Avnet alleging violations of Title VII, a Florida anti-discrimination statute and Florida's common law.  The lawsuit requested wide-ranging relief for the alleged violations, including back pay, reinstatement, damages for emotional pain and suffering, reputational harms, injunctive relief, costs and attorney's fees.  On November 22, 1995, Avnet responded to Paladino's lawsuit with a motion to stay proceedings and compel arbitration, based on the arbitration agreement described above and provisions of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, which require the courts to stay proceedings and compel arbitration under certain circumstances.  Paladino and Avnet then filed a series of legal briefs on Avnet's pending motion, and, on December 19, 1995, the district court denied the motion.  Avnet filed this appeal.

## ISSUE

Avnet advances a single issue on appeal: whether the district court erred in refusing to stay this action and compel the parties to submit the issues raised in the complaint to arbitration.

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction over Avnet's appeal from an order denying a motion to stay proceedings and compel arbitration is proper pursuant to 9 U.S.C. § 16(a).  Accord Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp. (In re Complaint of Hornbeck

3

Offshore (1984) Corp.), 981 F.2d 752, 754 (5th Cir. 1993).[1] We conduct a de novo

review of a district court's order denying a motion to compel arbitration. Kidd v.

Equitable Life Assur. Soc'y of Am., 32 F.3d 516, 518 (11th Cir. 1994).

## DISCUSSION

This case requires us to apply basic principles of contract interpretation in

harmony with a general federal policy in favor of arbitration. The federal policy is

expressed in

> [t]he Federal Arbitration Act [which] was originally enacted in 1925 and
> then reenacted and codified in 1947 as Title 9 of the United States Code. Its
> purpose was to reverse the longstanding judicial hostility to arbitration
> agreements that had existed at English common law and had been adopted
> by American courts, and to place arbitration agreements upon the same
> footing as other contracts.

---

[1]  It is assumed that the exception contained in section 1 of the FAA for
"contracts of employment of seamen, railroad employees, or any other class of workers
engaged in foreign or interstate commerce" does not apply to the agreement at issue here.
It is best not to decide this issue because it is unclear that the district court fully
considered it, and because Paladino failed to adequately develop the record with respect
to her actual responsibilities as a Regional Technical Sales Consultant for the
Southeastern United States. Although a majority of the circuits that have addressed the
section 1 exception have construed it narrowly, see Cole v. Burns Int'l Sec. Servs., 105
F.3d 1465, 1470-72 (D.C. Cir. 1997) (listing cases and adopting narrow construction of
section 1's scope), a considerable body of scholarly opinion suggests that those circuits'
view of section 1 is incorrect. See generally Joseph R. Grodin, Arbitration of
Employment Discrimination Claims: Doctrine and Policy in the Wake of Gilmer, 14
Hofstra Lab. L.J. 1 (1996); Matthew W. Finkin, "Workers' Contracts" Under the United
States Arbitration Act: An Essay in Historical Clarification, 17 Berkley J. Emp. & Lab. L.
282 (1996). The issue of section 1's scope was raised, but not decided, in the Supreme
Court's Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), decision.

Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1470 (D.C. Cir. 1997) (internal quotations and citations omitted). Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994). Section 3 of the FAA authorizes federal district courts, upon application of a party, to stay proceedings regarding "any issue referable to arbitration under an agreement in writing for such arbitration . . . until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (1994). Section 4 of the FAA grants federal district courts the power to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4 (1994).

The FAA does not "require parties to arbitrate what they have not agreed to do so, . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." American Express Fin. Advisors, Inc. v. Makarewicz, 122 F.3d 936, 940 (11th Cir. 1997) (quoting Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995) (issues will be deemed arbitrable unless it is clear that the arbitration clause has not included them). Presumption notwithstanding, "the courts are not to twist the language of the contract to achieve a

5

result which is favored by federal policy but contrary to the intent of the parties." Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1419-20 (11th Cir. 1990).

In this case we are faced with an arbitration agreement whose scope is defined in two clauses. The first clause states in a general fashion that Avnet and Paladino "consent to the settlement by arbitration of any controversy or claim arising out of or relating to . . . [Paladino's] employment or the termination of . . . [her] employment." Viewed in isolation, this clause appears all-inclusive, embracing both breach of contract and statutory claims. The arbitration agreement contains a second clause, however, that muddies the waters considerably. That clause states that "[t]he arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages."

The second clause can be read two ways: as a clarification of the types of claims the parties intended to submit to arbitration, i.e., only breach of contract claims, or as an explicit limitation on remedies available for any claims submitted to arbitration. Avnet urges us to construe the second clause as a limitation on remedies, and not as a statement about the types of claims the parties agreed to arbitrate. Avnet further urges that this court should then find the limitation on remedies inapplicable to Paladino's statutory claims if those statutes authorize remedies that a party cannot be required to waive as a condition of employment. Stated more plainly, Avnet urges us to declare that it has entered into a valid arbitration agreement with an invalid limitation of remedies clause that should be stricken for purposes of resolving its dispute with Paladino. Paladino

6

responds, in part, with an argument that the arbitration agreement Avnet authored

unconstitutionally denies her access to the courts, and should be stricken in its entirety.[2]

At first glance, Avnet's suggested approach seems appealing: it sends the parties to

arbitration, in accordance with the federal policy favoring arbitration, but preserves

Paladino's right to benefit from statutory remedies.  Upon closer examination, however,

Avnet's suggested approach is far more problematic.  This is so because the presence of

an unlawful provision in an arbitration agreement may serve to taint the entire arbitration

agreement, rendering the agreement completely unenforceable, not just subject to judicial

reformation.  See, e.g., Graham Oil v. Arvco Prods. Co., 43 F.3d 1244, 1248-49 (9th Cir.

1994) (arbitration clause that purported to waive federal statutory remedies and to shorten

statute of limitations for filing statutory claims was unenforceable), cert. denied 116 S.

Ct. 275 (1995); Stirlen v. Supercuts, Inc., 60 Cal. Rptr. 2d 138 (Cal. Ct. App. 1997)

(finding unconscionable and unenforceable an arbitration clause that, inter alia, limited

remedy available in arbitration to a money award not to exceed the amount of actual

damages for breach of contract); see also E. Allan Farnsworth, Farnsworth on Contracts §

---

[2]     Paladino also makes the following arguments: (1) that no binding
arbitration agreement exists because her signature on a handbook acknowledgment form
cannot constitute a contract under Florida law; (2) that any agreement that does exist is
void ab initio because of fraud in factum; and (3) that the FAA exempts employees who
are involved in interstate commerce.  Because we resolve this case on contract
interpretation grounds -- which we construe Paladino's access to the courts argument to
present -- we do not address Paladino's other arguments.

5.8, at 70 (1990) (severance is inappropriate when the entire provision represents an "integrated scheme to contravene public policy").

"It is well understood that, where a contract is unclear on a point, an interpretation that makes the contract lawful is preferred to one that renders it unlawful." Cole, 105 F.3d at 1486. Accordingly, the clause at issue is best construed as a gloss explaining the types of claims that the parties intended to submit to arbitration, rather than as a potentially unlawful limitation of statutory remedies. See Restatement of Contracts § 203(a) (1981) ("an interpretation which gives a reasonable, lawful and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"); see also Goldberg 912 F.2d at 1421 ("Where general propositions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control.").

The court in Alcaraz v. Avnet, Inc., 933 F. Supp. 1025 (D.N.M. 1996), employed an identical construction to the very same arbitration agreement clauses at issue here. In Alcaraz, the plaintiff brought a civil rights action against Avnet under Title VII and the Age Discrimination in Employment Act (ADEA). 933 F. Supp. at 1026. Avnet relied on the same arbitration agreement language at issue in the case at bar, and moved to compel arbitration. 933 F. Supp. at 1026. The plaintiff argued that the terms of Avnet's arbitration agreement precluded referral of his lawsuit to arbitration. 933 F. Supp. at 1027. Avnet argued in response that the limitation of remedies provision in its arbitration

8

agreement should have no bearing on whether the plaintiff's claims were arbitrable, and

that the arbitration agreement encompassed statutory claims based on Title VII and the

ADEA. 933 F. Supp. at 1028. The district court agreed with the plaintiff. The district

court first noted that "in any contract case, the parties' intent is controlling with regard to

whether they agreed to arbitrate a particular dispute, and determining intent is a question

of law for the court." 933 F. Supp. at 1027. The district court next observed that Avnet's

agreement contained language that proscribed the arbitrator's authority to award any

damages under Title VII or the ADEA. The district court then reasoned that "if by terms

of the Agreement, the arbitrator has no authority to award any damages under Title VII or

the ADEA, then the parties did not intend to submit Title VII or ADEA claims to

arbitration." 933 F. Supp. at 1027. Based on this reasoning, the district court denied

Avnet's motion to compel arbitration. 933 F. Supp. at 1028.

The conclusion that the Alcaraz court reached is fully consistent with the federal

presumption in favor of arbitrability. As suggested above, this interpretation of Avnet's

arbitration agreement saves that agreement from being held unenforceable in its entirety.

The interpretation thus heightens the likelihood that Avnet will be able to rely on the

FAA to have at least some of its disputes with employees resolved via arbitration in the

future.[3]

---

[3]     Although Avnet mentions its common law claims in its initial description of
the issue on appeal, it has advanced no substantive argument in its brief or at oral
argument to the effect that Paladino's common law claim should be subject to arbitration

9

This approach also remains true to our precedents, most particularly our recent holding in Brisentine v. Stone & Webster Engineering Corp., 117 F.3d 519 (11th Cir. 1997), where we indicated that

> a mandatory arbitration clause does not bar litigation of a federal statutory claim, unless three requirements are met.  First, the employee must have agreed individually to the contract containing the arbitration clause . . . .  Second, the agreement must authorize the arbitrator to resolve federal statutory claims -- it is not enough that the arbitrator can resolve contract claims, even if factual issues arising from those claims overlap with the statutory claim issues.  Third, the agreement must give the employee the right to insist on arbitration if the federal statutory claim is not resolved to his satisfaction in any grievance process.

117 F.3d at 526-27 (emphasis added).

Brisentine does not stand for the proposition that an arbitration agreement must specifically list every federal or state statute it purports to cover.  See, e.g., Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 700 (11th Cir. 1992) (finding that Title VII claims were subject to arbitration where the arbitration agreement stated that the parties agreed to arbitrate "any dispute, claim or controversy that may arise between me and my firm, or a customer or any other person that is required to be arbitrated under the rules, constitution or by-laws of the organizations with which I register").  To fall within the FAA's ambit, however, an arbitration agreement that purports to cover statutory claims

---

even if her statutory claims are not.  We thus deem that argument abandoned.  See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (issues not argued on appeal are deemed waived, and a passing reference in an appellate brief is insufficient to raise an issue).

10

must contain terms that generally and fairly inform the signatories that it covers statutory claims. The arbitration agreement's terms regarding remedies must also be fully consistent with the purposes underlying any statutory claims subject to arbitration. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("'[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum'") (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1995)). This is so because "the beneficiaries of public statutes are entitled to the rights and protections provided by the law," including "all of the types of relief that would otherwise be available in court." Cole, 105 F.3d at 1482.

In this case, Avnet's arbitration agreement is woefully deficient, at least to the extent that it purports to cover statutory claims. First, it does not generally and fairly inform Paladino – a worker who is presumably not trained to decipher legalese -- that it covers statutory claims such as Title VII claims. Rather it states in one clause that it covers "any controversy or claim arising out of or relating to" her employment or termination, and states in another clause that arbitrators shall have authority to award damages for "breach of contract only." This confusing language is a far cry from the clear language we approved of in Bender, or from language that other courts have found sufficient to provide an employee fair notice. See, e.g., Cole, 105 F.3d at 1469 (approving arbitration agreement that read as follows:

11

> This pre-dispute resolution agreement will cover all matters directly or indirectly related to your recruitment, employment or termination of employment by the Company; including, but not limited to, claims involving laws against discrimination whether brought under federal and/or state law, and/or claims involving co-employees but excluding Worker's Compensation Claims.)

Second, Avnet's arbitration agreement contains language which, if read as Avnet proposes, is fundamentally at odds with the purposes of Title VII because it completely proscribes an arbitral award of Title VII damages. See Alcaraz, 933 F. Supp. at 1028 (the "[a]greement at issue here precludes an arbitrator from awarding <u>any</u> kind of damages other than contract damages").

## CONCLUSION

Given the deficiencies and limited nature of this arbitration agreement, the district court properly declined to compel arbitration of Paladino's lawsuit alleging statutory anti-discrimination claims. We therefore affirm the district court's order and remand this case for further proceedings.

**AFFIRMED and REMANDED.**

12